1   John Houston Scott, SBN 72578
    SCOTT LAW FIRM
2   1388 Sutter Street, Suite 715
    San Francisco, CA 94109
3   Tel:  (415) 561-9601
    Fax:  (415) 561-9609
4   john@scottlawfirm.net

5   William A. Cohan, SBN 141804
    WILLIAM A. COHAN, P.C.
6   P.O. Box 3448
    Rancho Santa Fe, CA  92067
7   Tel: (858) 832-1632
    Fax: (858) 832-1845
8   bill@williamacohan.com

9   Brian Gearinger, SBN 146125
    GEARINGER LAW GROUP
10  740 Fourth Street
    Santa Rosa, CA  95404
11  Tel: (415) 440-3102
    brian@gearingerlaw.com
12

Izaak D. Schwaiger, SBN 267888
Attorney at Law
130 Petaluma Avenue, Suite 1A
Sebastopol, CA  95472
Tel: (707) 595-4414
Fax: (707) 581-1983
izaak@izaakschwaiger.com

Omar Figueroa, SBN 196650
Law Offices of Omar Figueroa
7770 Healdsburg Avenue, Suite A
Sebastopol, CA  95472
Tel: (707) 829-0215
Fax: (707) 861-9787
omar@alumni.stanford.edu

Randolph Daar, SBN 88195
Attorney at Law
3330 Geary Blvd., 3rd Floor East
San Francisco, CA  94118
Tel: (415) 986-5591
Fax: (415) 421-1331
rdaar@pier5law.com

13

14   Attorneys for Plaintiff, EZEKIAL FLATTEN

15

16                    UNITED STATES DISTRICT COURT

17                    NORTHERN DISTRICT OF CALIFORNIA

18

19   EZEKIAL FLATTEN                          Case No:  4:18-cv-06964-HSG

20            Plaintiff,                      PLAINTIFF'S OPPOSITION TO
     v.                                       DEFENDANT CITY OF ROHNERT
21                                            PARK'S MOTION TO DISMISS
     CITY OF ROHNERT PARK, JACY TATUM,        COMPLAINT
22   JOSEPH HUFFAKER, THE HOPLAND
     BAND OF POMO INDIANS, STEVE HOBB,        Date:      March 28, 2019
23   and DOES 1-50, inclusive.                Time:      2:00 p.m.
                                              Location:  Oakland Courthouse
24            Defendants.                                1301 Clay Street, Oakland, CA
                                                         Courtroom 2, 4th Floor
25                                            Judge:     The Hon. Haywood S. Gilliam, Jr.

26

27

28

PLAINTIFF'S OPPOSITION TO DEFENDANT CITY OF ROHNERT PARK'S MOTION TO DISMISS COMPLAINT

SCOTT LAW FIRM
1388 SUTTER STREET, SUITE 715
SAN FRANCISCO, CA 94109

## I.   INTRODUCTION

The plaintiff has alleged specific facts sufficient to state a *Monell* claim based on a "custom or long-standing policy" consistent with the holding in *Hunter v County of Sacramento*, 652 F. 3d 1225 (9th Cir. 2011) and Ninth Circuit Model Jury Instruction 9.4.[1]

The plaintiff has also alleged facts sufficient to state a Bane Act claim based on the intimidation and coercion that was inherently and inextricably related to the unlawful stop and theft of the plaintiff's cannabis. *Cornell v City and County of San Francisco*, 17 Cal. App. 5th 766 (2017).

Finally, plaintiff seeks leave to amend his complaint should this court find that the allegations are insufficient in any way.

## II.   STATEMENT OF FACTS

The Complaint makes the following specific allegations this court must accept as true, while drawing inferences in favor of the non-moving party.

### A.   The Incident.

11.   On December 5, 2017, Ezekial Flatten was travelling southbound on Highway 101 in the County of Mendocino between the cities of Hopland and Cloverdale. He was driving a rental car and transporting approximately three pounds of legal cannabis to be delivered to a testing facility for use in lawful commerce.

12.   At approximately 12:00 p.m., defendants Huffaker and Hobbs were parked on the side of Highway 101 in an unmarked, black police SUV. As Mr. Flatten passed their position, the defendants initiated a pretextual traffic stop of his vehicle without reasonable suspicion to believe a crime had been committed. Instead, defendants intended to stop and search Mr. Flatten on a hunch that he might have been transporting cannabis and/or the proceeds from cannabis sales.

---

[1] The plaintiff has only alleged one *Monell* claim at this time, in his Sixth Cause of Action, based on an unofficial custom and practice.  The motion to dismiss addresses two *Monell* claims not alleged at this time, i.e., a ratification claim and an inadequate training claim.  (Document 14, at pages 4 – 6).  The plaintiff is not opposing the motion as to claims not brought.  However, the plaintiff may seek to amend the complaint in the future to add additional *Monell* claims based on discovery and to conform to proof.

13.     Mr. Flatten yielded to the patrol vehicle's forward-facing emergency lights and pulled off of the road.  The defendants contacted plaintiff at the side of his vehicle. They were wearing green military-style uniforms with no badges, insignia, or nametags, and were armed with guns and wearing bulletproof vests. The defendants asked plaintiff if he knew how fast he was going, to which he replied, "61 or 62." Hobb countered, "You were going a little faster than that," and offered no further explanation for the traffic stop. Instead he began questioning Mr. Flatten as to where he was going to and coming from.

14.     The defendants informed Mr. Flatten that they were going to search his vehicle and its contents. Without consent or other legal justification, the defendants removed a sealed cardboard box from the rear of plaintiff's vehicle and cut it open with a knife, discovering the cannabis inside. The defendants then took a picture of plaintiff, plaintiff's drivers license, and his license plate.

15.     Defendants informed Mr. Flatten that they were with the ATF, commented that cannabis was taking over in California, and advised him that he may be getting a letter from Washington. In less than five minutes, the officers had left the scene with Mr. Flatten's cannabis without ever having run his name for wants and warrants, and without so much as issuing a citation for even a traffic infraction.

**B.     The Historical Context**

16.     Defendant Huffaker is an officer with the Rohnert Park Department of Public Safety. Rohnert Park is a municipality incorporated in the County of Sonoma, State of California. Defendant Huffaker was, at the time of these events, a member of a drug interdiction task force (hereinafter "task force"), and as such has participated in numerous traffic stops along the 101 corridor ostensibly for the purposes of narcotics enforcement.

17.     This task force's most active members are Defendants Tatum and Huffaker. At its inception, Rohnert Park's use of the task force was designed to buttress the small department's failing budget through the seizure of cash believed to be associated with narcotics transactions.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

SCOTT LAW FIRM
1388 SUTTER STREET, SUITE 715
SAN FRANCISCO, CA 94109

Between 2016 and 2017, the Rohnert Park Department of Public safety kept $1.2 million in seized funds for its own.

18.     Together, Tatum and Huffaker conspired to expand the legitimate interdiction mission to one of person financial gain, and over the years seized thousands of pounds of cannabis and hundreds of thousands of dollars of currency without issuing receipts for the seizures, without making arrests for any crimes, and without any official report of the forfeitures being made. Oftentimes when arrests or reports were made, the cash and cannabis seized was significantly underreported in furtherance of the conspiracy allowing the officers to skim off the top of even otherwise legal interdictions.

19.     In furtherance of the conspiracy, defendants Tatum and Huffaker sold the seized cannabis to black market vendors without declaring the proceeds as income, and engaged in money laundering activities through the purchase, improvement, and sale of real property with the proceeds of these illegal activities.

20.     Jacy Tatum was recognized as Rohnert Park's Officer of the Year in 2015 for the substantial revenues he brought to the department. He was further recognized for his interdiction efforts by the private law enforcement intelligence network known as "Desert Snow," a for-profit entity specializing in interdiction training for police officers. Desert Snow operates a privately maintained criminal intelligence network known as "Black Asphalt". Through the course of the conspiracy, Defendants Tatum, Huffaker, and Hobb used information from Black Asphalt in determining what automobiles to intercept, even though the drivers of those automobiles had committed no crimes to justify a detention.

21.     Working in concert with other officers from Rohnert Park and from outside agencies, Tatum and Huffaker acted under color of official right and under color of state law to take the personal property of Mr. Flatten and others against their will by intimidation and implied threats of force, or by obtaining the consent of their victims through the wrongful use of threatened force, violence, and fear.

- 3 -

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**SCOTT LAW FIRM**
1388 SUTTER STREET, SUITE 715
SAN FRANCISCO, CA 94109

### III.    ARGUMENT

#### A.    Applicable Law Regarding a Motion to Dismiss

A dismissal motion should be denied if the subject complaint contains factual allegations adequate to give defendants fair notice of the pending claims, and, enables them to defend themselves if the complaint's allegations, taken as true, plausibly suggest entitlement to relief. *Starr v. Baca*, 652 F.3d 1202, 1216-1217 (9th Cir. 2011), *rehearing en banc denied*, 659 F.3d 850 (9th Cir. 2011). When ruling on a dismissal motion, the Court must accept as true all factual allegations in the complaint. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). The Court must also draw inferences in favor of the plaintiff; the complaint should be construed favorably to the pleader. *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974); *see also Walleri v. Federal Home Loan Bank of Seattle*, 83 F.3d 1575, 1580 (9th Cir. 1996). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citations omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*, 556 U.S. at 677-78.

Dismissal for failure to state a claim is proper "only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Hishon v. King & Spalding*, 467 U.S. 69, 73, (1984). The issue is whether the plaintiffs are entitled to offer evidence to support the claims, not whether based on a complaint's allegations the will prevail as a matter of law. *Scheuer*, 416 U.S. at 236 (no quotations added). The Ninth Circuit has "repeatedly held that a district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000).

#### B.    Plaintiff has Adequately Alleged a Custom and Long Standing Practice.

In *Hunter v County of Sacramento*, 652 F.3d 1225 (9th Cir. 2011) Plaintiffs alleged that they were subjected to excessive force in the Main Jail pursuant to a longstanding practice or custom of subjecting inmates at the Main Jail to excessive force. *Id.*, at 1227. In support of this

- 4 -

claim the Plaintiffs relied on an expert, Lt. Twomey, a former employee of the Sacramento County Sheriff's Department. He declared there were 40 to 50 major incidents involving excessive force at the main jail from 2000 to 2005. He has also declared the officials at the jail failed to investigate the incidents, discipline the guards, or take other action to address the problem. *Id*.

At trial the district court instructed the jury consistent with Ninth Circuit Model Jury Instruction 9.4:

> The instruction of central relevance to this appeal laid out the elements of a *Monell* laim for the use of excessive force in violation of the Fourth Amendment ("*Monell* instruction"). The District Court's proposed *Monell* instruction read, in its entirety, as follows:

> Each Plaintiff alleges that the Defendant County of Sacramento violated his Fourth Amendment constitutional right against use of excessive force. To prevail on this claim each Plaintiff must prove by a preponderance of the evidence each of the following elements:

> First, that one or more of Defendant's employees used excessive force against Plaintiff in violation of the Fourth Amendment of the United States constitution.

> Second, that in so doing, Defendant's employee or employees acted pursuant to a longstanding practice or custom of Defendant.

> Third, that Plaintiff was injured; and,

> Fourth, that Defendant's longstanding practice or custom was so closely related to Plaintiff's injury that it was the moving force causing Plaintiff's injury.

*Id*., at 1228.

The Plaintiffs objected to this instruction and proposed modifications. Specifically, plaintiffs requested ten additional instructions, all of which were taken from their earlier list of proposed instructions and addressed standards for liability under *Monell*. *Id*., at 1228-1229.

The jury returned a verdict in favor of the County and the district court denied plaintiff's motion for a new trial. On appeal, the Ninth Circuit held it was reversible error not to give two of the proposed instructions that were consistent with the plaintiff's theory of the case:

SCOTT LAW FIRM
1388 SUTTER STREET, SUITE 715
SAN FRANCISCO, CA 94109

1. Plaintiff may attempt to prove the existence of a custom or informal policy with evidence of repeated constitutional violations for which the errant municipal officials were not discharged or reprimanded; and

2. Failure to properly investigate, like failure to discipline employees involved in incidents of excessive force, is evidence of and supports a finding excessive force was not only accepted but was customary. *Id.*, at 1233-1234.

The plaintiff's theory of municipal liability is similarly based on an unofficial custom and long-standing policy.[2] Here, the plaintiff has alleged at paragraph 46: "This custom and practice of members of the Interdiction Team, including Defendants Tatum and Huffaker, used unlawful stops as a pretext to unlawfully search vehicles for cannabis and cash."

At paragraph 47 it is alleged: "As implemented members of the Interdiction Team had discretion to (a) arrest the person(s) who possessed the cannabis and/or cash and report all or some of the evidence of a crime, or (b) not arrest the person(s) who possessed cannabis or cash, steal the property, and not report the stop or theft."

At paragraph 48 it is alleged: "Pursuant to this custom and practice hundreds of unlawful traffic stops were made during the past ten years. This custom and practice was known of and approved by the chain of command … including its former Chief Brian Masterson."

The plaintiff seeks leave to amend his complaint, if necessary, to allege that prior to his stop on December 5, 2017, the members of the Interdiction Team were not properly investigated, nor were they discharged or reprimanded.

---

[2] A more recent decision of the Ninth Circuit dealt with an official policy, not an unofficial custom and long-standing practice as alleged in this case and Hunter. In *Castro v County of Los Angeles*, 833 F.3d 1060 (9th Cir. 2016) (*en banc*) the plaintiff was arrested for public drunkenness and placed in a "sobering cell." Several hours later a "combative" suspect was placed in the cell with Castro. Several minutes later Castro was discovered in the cell lying unconscious in a pool of blood. The official policy claim, in summary, was to use a sobering cell that lacked adequate audio surveillance to detain more than one belligerent drunk person while checking the cell visually only once every half hour. Id. art 1075. The jury found that this official policy caused Castro's injuries. Because Castro involved an official policy the plaintiff was also required to prove that the policy was adhered to with "deliberate indifference to the constitutional rights of the jail inhabitants." Id. at 1076.

SCOTT LAW FIRM
1388 SUTTER STREET, SUITE 715
SAN FRANCISCO, CA 94109

- 6 -

SCOTT LAW FIRM
1388 SUTTER STREET, SUITE 715
SAN FRANCISCO, CA 94109

C.     **Plaintiff has Adequately Alleged a Bane Act Claim.**

The plaintiff has alleged at paragraph 51 of his complaint: "Defendants Huffaker and Hobb intentionally interfered with the Plaintiff's civil rights by threats, intimidation and coercion by virtue of their uniforms, weapons and appearance as law enforcement officers acting under color of authority.   These acts were intended to deprive the Plaintiff of his property without due process, and other civil rights, through threats, intimidation, coercion and the implied threat of violence."

California Civil Code Section 52.1, known as the Bane Act, has been the subject of much debate and some confusion since it was enacted in 1987. It has been raised in a variety of circumstances involving police. Recent decisions are illustrative of its evolution.  *Cornell v City and County of San Francisco*, 17 Cal.App.5th 766 (2017) (a false arrest claim and subsequent retaliation) and *Lawrence v City and County of San Francisco*, 258 F. Supp. 3d 977 (N.D. Cal. 2017) (an excessive force claim).

This case falls squarely within the *Cornell* paradigm because it involves allegations of an unlawful stop, an unlawful seizure, and subsequent retaliation. Plaintiff Flatten was not arrested, nor was he subjected to excessive force. Rather, he was a victim of highway robbery by two armed men posing as law enforcement officers.

The court in *Cornell* held that where an unlawful arrest is properly plead and proven, the "threat, intimidation or coercion" element of Section 52.1 requires a specific intent to violate protected rights. *Id*., at 799 – 804. "Accordingly, we hold that, where, as here, an unlawful arrest is properly pleaded and proved, the egregiousness required by Section 52.1 is tested by whether the circumstances indicate the arresting officer had a specific intent to violate the arrestee's right to freedom from unreasonable seizure, not by whether the evidence shows something beyond the coercion inherent in the wrongful detention." *Id*., at 801 – 802.

Here, there was not an arrest, rather, an unlawful stop and an unlawful seizure of property. The specific intent requirement is self-evident. The two men who unlawfully stopped the plaintiff and literally stole cannabis from him, without an arrest or citation, obviously had the specific

- 7 -

intent to violate plaintiff's protected property rights and liberty interests. The appearance and actions of the defendants was intended to be intimidating and coercive to achieve an unlawful end.

In *Cornell* the court noted:

"On this reading of the evidence, these two officers had every opportunity to exercise restraint as it became clearer and clearer that their initial suspicions of Cornell were unfounded, butrather than let the matter go when they finally released him, they retaliated against him as away of undermining his ability to claim to his superiors he was arrested without probable cause.This apparent effort to obstruct Cornell's ability to assert his right to freedom from unreasonable seizure violated Section 52.1 just as surely as his actual arrest did, while compounding the harm. On this record, we have no trouble concluding the specific intent standard was met." *Id.,* at 804.

In this case, as in *Cornell*, there is also an element of retaliation that further supports the inference of specific intent to deprive the plaintiff of his rights in violation of Section 52.1. Complaint, at paragraphs 23 – 28. (Document 1).

23.     Two days after the traffic stop, plaintiff reported the robbery to local media outlets and federal and state law enforcement. On February 11, 2018, an article appeared on a Mendocino County journalist's blog reporting on Mr. Flatten's story. Two days after that publication, Defendant Tatum issued a press release from his department attempting to explain the traffic stop (which he mistakenly believed himself to have been a part of), and clarifying that "no other agencies including the Mendocino County Sheriff's Office or Hopland Tribal Police were involved…"

24.     These interdictions became so lucrative to the officers involved that the conspiracy required protection from outside scrutiny. Thus, when plaintiff came forward publicly, Tatum quickly sought to quash plaintiff's accusations by issuing a press release to whitewash the conspiracy. But Tatum's statement to the press was too hastily contrived, and his involvement in the illegal seizures too prolific. As a result his press release defended *the wrong illegal seizure*, and instead of diffusing the scrutiny plaintiff's allegations had brought, it brought the allegations more clearly into focus.

- 8 -

25.     Following the bogus press release, an internal investigation was launched at the Rohnert Park Department of Public Safety. Shortly thereafter, Defendant Tatum resigned from the force, Defendant Huffaker was placed on administrative leave, and the Director of the Department announced his retirement.

26.     Mr. Flatten's statements to the press became a matter of public concern, and were reported on widely across California and the nation. (See Exhibit B, attached.)

27.     Beginning in April of 2018 and continuing to the time of this filing, plaintiff has become the subject of surveillance, harassment, threats, and intimidation by agents of the defendants and/or co-conspirators whose identities are unknown at this time. On September 27, 2018, plaintiff discovered a GPS tracking device hardwired beneath his car's dashboard. On November 11, 2018, plaintiff received an anonymous message via social media that he was "playing with fire."

28.     These acts were designed to chill plaintiff's speech regarding a matter of public concern. Plaintiff seeks injunctive relief to remedy the irreparable harm caused by these ongoing acts.

Accordingly, based on the reasoning in *Cornell* the Plaintiff has sufficiently alleged a Bane Act claim.

## IV.     CONCLUSION

For these reasons the motion to dismiss should be denied.  Alternatively, plaintiff should be given leave to amend.

SCOTT LAW FIRM

Dated:  January 17, 2019              /s/ John Houston Scott
                                      John Houston Scott
                                      Attorney for Plaintiff

SCOTT LAW FIRM
1388 SUTTER STREET, SUITE 715
SAN FRANCISCO, CA 94109