John Houston Scott, SBN 72578
SCOTT LAW FIRM
1388 Sutter Street, Suite 715
San Francisco, CA 94109
Tel:  (415) 561-9601
Fax:  (415) 561-9609
john@scottlawfirm.net

Izaak D. Schwaiger, SBN 267888
Attorney at Law
130 Petaluma Avenue, Suite 1A
Sebastopol, CA  95472
Tel: (707) 595-4414
Fax: (707) 581-1983
izaak@izaakschwaiger.com

William A. Cohan, SBN 141804
WILLIAM A. COHAN, P.C.
P.O. Box 3448
Rancho Santa Fe, CA  92067
Tel: (858) 832-1632
Fax: (858) 832-1845
bill@williamacohan.com

Omar Figueroa, SBN 196650
Law Offices of Omar Figueroa
7770 Healdsburg Avenue, Suite A
Sebastopol, CA  95472
Tel: (707) 829-0215
Fax: (707) 861-9787
omar@alumni.stanford.edu

Brian Gearinger, SBN 146125
GEARINGER LAW GROUP
740 Fourth Street
Santa Rosa, CA  95404
Tel: (415) 440-3102
brian@gearingerlaw.com

Randolph Daar, SBN 88195
Attorney at Law
3330 Geary Blvd., 3rd Floor East
San Francisco, CA  94118
Tel: (415) 986-5591
Fax: (415) 421-1331
rdaar@pier5law.com

Attorneys for Plaintiff, EZEKIAL FLATTEN

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

EZEKIAL FLATTEN

      Plaintiff,

v.

CITY OF ROHNERT PARK, JACY TATUM, JOSEPH HUFFAKER, and DOES 1-50, inclusive.

      Defendants.

Case No:  4:18-cv-06964-HSG

**STIPULATION AND [PROPOSED] ORDER TO FILE A CORRECTED FIRST AMENDED COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF**

IT IS HEREBY STIPULATED BY AND BETWEEN plaintiff EZEKIAL FLATTEN, defendant CITY OF ROHNERT PARK (City), defendant JOSEPH HUFFAKER, and defendant JACY TATUM, by and through their counsels of record, that Plaintiff file his corrected Amended First Amended Complaint for Damages and Injunctive Relief with Exhibits A and B.

### RECITALS

1. The plaintiff filed a First Amended Complaint for Damages and Injunctive Relief against the City of Rohnert Park, Jacy Tatum, Joseph Huffaker, and Does 1-50 on March 25, 2019, at Dkt. 37.

2. Plaintiff inadvertently omitted from this First Amended Complaint for Damages and Injunctive Relief Exhibits A and B that were attached to his initial complaint.

### STIPULATION

WHEREFORE, the plaintiff and defendants hereby stipulate and agree as follows:

1. The plaintiff may file a [Corrected] Amended First Amended Complaint for Damages and Injunctive Relief, attached hereto as **Exhibit 1**, where the only corrections are to add the word "*[CORRECTED]*" and attach the same Exhibit A and B as were attached to the initial complaint.

**IT IS SO STIPULATED.**

Dated: May 23, 2019                    Respectfully submitted,

                                       **SCOTT LAW FIRM**

                                       By: /s/John Houston Scott
                                           John H. Scott, Attorney for Plaintiff
                                           EZEKIAL FLATTEN

Dated: May 23, 2019                    Respectfully submitted,

                                       **ALLEN GLAESSNER, HAZELWOOD
                                       & WERTH, LLP**

                                       By: /s/Dale L. Allen
                                           Dale L. Allen, Attorney for Defendant
                                           JOSEPH HUFFAKER

- 1 -

Dated: May 23, 2019

Respectfully submitted,

**ANGELO, KILDAY & KILDUFF, LLP**

By: /s/ Bruce Kilday
Bruce Kilday, Attorney for Defendant
JACY TATUM

**ATTESTATION**

I, John H. Scott, am the ECF user whose identification and password are being used to file the foregoing documents. Pursuant to Civil Local Rule 5.1(i)(3), I hereby attest that concurrence in the filing of this document has been obtained from each of its Signatories.

Respectfully submitted.

Dated: May 23, 2019

By: /s/John Houston Scott
John Houston Scott
Attorney for Plaintiff

**PURSUANT TO STIPULATION, IT IS SO ORDERED**.

DATED: _____5/24/2019_____

The Honorable Haywood S. Gilliam, Jr.
United States District Judge

- 2 -

SCOTT LAW FIRM
1388 SUTTER STREET, SUITE 715
SAN FRANCISCO, CA 94109

# Exhibit 1

John Houston Scott, SBN 72578
**SCOTT LAW FIRM**
1388 Sutter Street, Suite 715
San Francisco, CA 94109
Tel:  (415) 561-9601
Fax:  (415) 561-9609
john@scottlawfirm.net

William A. Cohan, SBN 141804
**WILLIAM A. COHAN, P.C.**
P.O. Box 3448
Rancho Santa Fe, CA  92067
Tel: (858) 832-1632
Fax: (858) 832-1845
bill@williamacohan.com

Brian Gearinger, SBN 146125
**GEARINGER LAW GROUP**
740 Fourth Street
Santa Rosa, CA  95404
Tel: (415) 440-3102
brian@gearingerlaw.com

Izaak D. Schwaiger, SBN 267888
Attorney at Law
130 Petaluma Avenue, Suite 1A
Sebastopol, CA  95472
Tel: (707) 595-4414
Fax: (707) 581-1983
izaak@izaakschwaiger.com

Omar Figueroa, SBN 196650
Law Offices of Omar Figueroa
7770 Healdsburg Avenue, Suite A
Sebastopol, CA  95472
Tel: (707) 829-0215
Fax: (707) 861-9787
omar@alumni.stanford.edu

Randolph Daar, SBN 88195
Attorney at Law
3330 Geary Blvd., 3rd Floor East
San Francisco, CA  94118
Tel: (415) 986-5591
Fax: (415) 421-1331
rdaar@pier5law.com

Attorneys for Plaintiff, EZEKIAL FLATTEN

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| EZEKIAL FLATTEN | Case No:  4:18-cv-06964-HSG |
| Plaintiff, | ***[CORRECTED]* FIRST AMENDED COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF** |
| v. | |
| CITY OF ROHNERT PARK, JACY TATUM, JOSEPH HUFFAKER, and DOES 1-50, inclusive. | ***JURY TRIAL DEMANDED*** |
| Defendants. | |

PLAINTIFF EZEKIAL FLATTEN complains of Defendants and alleges as follows:

## JURISDICTION AND VENUE

1.      This action arises under 42 U.S.C. § 1983. Jurisdiction is conferred by virtue of 28 U.S.C. §§ 1331 and 1343, and by 18 USC § 1964(c).

2.      The conduct alleged herein occurred in Mendocino and Sonoma Counties, State of California. Venue of this action lies in the United States District Court for the Northern District of California by virtue of 28 USC § 1391.

## PARTIES

3.      Plaintiff Ezekial Flatten resides in Texas.

4.      Defendant City of Rohnert Park is a public entity situated in the County of Sonoma, State of California and organized under the laws of the State of California.

5.      Defendants Jacy Tatum and Joseph Huffaker were police officers employed by the City of Rohnert Park.  They acted in the course and scope of their employment, and under color of state law, at all times mentioned herein.

6.      Plaintiff does not presently know the true names and capacities of defendants DOES 1 through 25, inclusive, and therefore sues them by these fictitious names. Plaintiff is informed and believes that DOES 1 through 50, and each of them, were responsible in some manner for the acts or omissions alleged herein. Plaintiff will seek leave to amend this Complaint to add their true names and capacities when they have been ascertained.

7.      In doing the acts and/or omissions alleged herein, defendants and each of them acted under color of authority and/or under color of state law, and, in concert with each other.

8.      Defendants Tatum, Huffaker, and Does 1 through 50 conspired to achieve a common goal and/or acted in concert to achieve said goal.  In doing the acts and omissions alleged herein said Defendants conspired and/or acted in furtherance of the conspiracy to (a) unlawfully stop the Plaintiff and seize his property, (b) deprive the Plaintiff of his property without due process and through the outrageous abuse of police powers, and (c) retaliate against

SCOTT LAW FIRM
1388 SUTTER STREET, SUITE 715
SAN FRANCISCO, CA 94109

SCOTT LAW FIRM
1388 SUTTER STREET, SUITE 715
SAN FRANCISCO, CA 94109

the Plaintiff in an effort to chill his speech for exercising his right to speak and petition the government regarding matters of public concern.

### STATEMENT OF FACTS

9.     On December 5, 2017, Ezekial Flatten was travelling southbound on Highway 101 in the County of Mendocino between the cities of Hopland and Cloverdale. He was driving a rental car and transporting approximately three pounds of legal cannabis to be delivered to a testing facility for use in lawful commerce.

10.     At approximately 12:00 p.m., defendants Huffaker and Doe 1 were parked on the side of Highway 101 in an unmarked, black police SUV. As Mr. Flatten passed their position, the defendants initiated a pretextual traffic stop of his vehicle without reasonable suspicion to believe a crime had been committed. Instead, defendants intended to stop and search Mr. Flatten on a hunch that he might have been transporting cannabis and/or the proceeds from cannabis sales.

11.     Mr. Flatten yielded to the patrol vehicle's forward-facing emergency lights and pulled off of the road.  The defendants contacted plaintiff at the side of his vehicle. They were wearing green military-style uniforms with no badges, insignia, or nametags, and were armed with handguns and wearing bulletproof vests. The defendants asked plaintiff if he knew how fast he was going, to which he replied, "61 or 62." Doe 1 countered, "You were going a little faster than that," and offered no further explanation for the traffic stop. Instead he began questioning Mr. Flatten as to where he was going to and coming from.

12.     The defendants informed Mr. Flatten that they were going to search his vehicle and its contents. Without consent or other legal justification, the defendants removed a sealed cardboard box from the rear of plaintiff's vehicle and cut it open with a knife, discovering the marijuana inside. The defendants then took pictures of plaintiff, plaintiff's drivers license, and his license plate.

13.     Defendants informed Mr. Flatten that they were with the ATF, commented that marijuana was taking over in California, and advised him that he may be getting a letter from Washington. In less than five minutes, the officers had left the scene with Mr. Flatten's cannabis

- 3 -

SCOTT LAW FIRM
1388 SUTTER STREET, SUITE 715
SAN FRANCISCO, CA 94109

without ever having run his name for wants and warrants, and without so much as issuing a citation for even a traffic infraction.

14.     Defendant Huffaker is an officer with the Rohnert Park Department of Public Safety. Rohnert Park is a municipality incorporated in the County of Sonoma, State of California. Defendant Huffaker was, at the time of these events, a member of a drug interdiction task force (hereinafter "Task Force"), and as such has participated in numerous traffic stops along the 101 corridor ostensibly for the purposes of narcotics enforcement.

15.     The Task Force's most active members are Defendants Tatum and Huffaker. At its inception, Rohnert Park's use of the Task Force was designed to buttress the small department's failing budget through the seizure of cash believed to be associated with narcotics transactions. Between 2016 and 2017, the Rohnert Park Department of Public safety kept $1.2 million in seized funds for its own use.

16.     Together, Tatum and Huffaker conspired to expand the legitimate interdiction mission to one of person financial gain, and over the years seized thousands of pounds of marijuana and hundreds of thousands of dollars of currency without issuing receipts for the seizures, without making arrests for any crimes, and without any official report of the forfeitures being made. Oftentimes when arrests or reports were made, the cash and cannabis seized was significantly underreported in furtherance of the conspiracy allowing the officers to skim off the top of even otherwise legal interdictions.

17.     In furtherance of the conspiracy, defendants Tatum and Huffaker sold the seized marijuana to black market vendors without declaring the proceeds as income, and engaged in money laundering activities through the purchase, improvement, and sale of real property with the proceeds of these illegal activities.

18.     Jacy Tatum was recognized as Rohnert Park's Officer of the Year in 2015 for the substantial revenues he brought to the department. He was further recognized for his interdiction efforts by the private law enforcement intelligence network known as "Desert Snow," a for-profit entity specializing in interdiction training for police officers. Desert Snow operates a privately

- 4 -

maintained criminal intelligence network known as "Black Asphalt". Through the course of the conspiracy, Defendants Tatum, Huffaker, and Does 1-25 used information from Black Asphalt in determining what automobiles to intercept, even though the drivers of those automobiles had committed no crimes to justify a detention.

19.     Working in concert with other officers from Rohnert Park and from outside agencies, Tatum and Huffaker and Does 1-25 acted under color of official right and under color of state law to take the personal property of Mr. Flatten and others against their will by intimidation and implied threats of force, or by obtaining the consent of their victims through the wrongful use of threatened force, violence, and fear.

20.     On December 7, 2017, two days after Flatten's traffic stop, plaintiff reported the robbery to local media outlets and federal and state law enforcement. On February 11, 2018, an article appeared on a Mendocino County journalist's blog reporting on Mr. Flatten's story. Two days after that publication, Defendant Tatum issued a press release from his department attempting to explain the traffic stop (which he mistakenly believed himself to have been a part of), and clarifying that "no other agencies including the Mendocino County Sheriff's Office or Hopland Tribal Police were involved…" (See Exhibit A, attached).

21.     These interdictions became so lucrative to the officers involved that the conspiracy required protection from outside scrutiny. Thus, when plaintiff came forward publicly, Tatum quickly sought to quash plaintiff's accusations by issuing a press release to whitewash the conspiracy. But Tatum's statement to the press was too hastily contrived, and his involvement in the illegal seizures too prolific. As a result his press release defended *the wrong illegal seizure*, and instead of diffusing the scrutiny plaintiff's allegations had brought, it confirmed the existence of a more expansive, continuing criminal enterprise.

22.     Following the bogus press release, an internal investigation was launched at the Rohnert Park Department of Public Safety. Shortly thereafter, Defendant Tatum resigned from the force, Defendant Huffaker was placed on administrative leave, and the Director of the Department announced his retirement.

**SCOTT LAW FIRM**
1388 SUTTER STREET, SUITE 715
SAN FRANCISCO, CA 94109

23.     Mr. Flatten's statements to the press became a matter of public concern, and were reported on widely across California and the nation. (See Exhibit B, attached.)

24.     Beginning in April of 2018 and continuing to the time of this filing, plaintiff has become the subject of surveillance, harassment, threats, and intimidation by agents of the defendants and/or co-conspirators whose identities are unknown at this time. On September 27, 2018, plaintiff discovered a GPS tracking device hardwired beneath his car's dashboard. On November 11, 2018, plaintiff received an anonymous message via social media that he was "playing with fire."

25.     These acts were designed to chill plaintiff's speech regarding a matter of public concern. Plaintiff seeks injunctive relief to remedy the irreparable harm caused by these ongoing acts.

### STATEMENT OF DAMAGES

26      As a result of defendants' conduct, plaintiff sustained economic damages and consequential damages.

27.     As a result of defendants' conduct, plaintiff sustained and will continue to sustain damages to his career, reputation, future and prospective earning capacity and wages, and prospective economic opportunities and advantages in an amount determined according to proof.

28.     As a further result of defendants' conduct, plaintiff suffered and will continue to suffer general damages including fear, anxiety, humiliation, and emotional distress in an amount to be determined according to proof.

29.     The actions of Defendants Jacy Tatum, Joseph Huffaker, and Does 1-25 were willful, wanton, reckless, malicious, oppressive and/or done with a conscious or reckless disregard for the rights of the plaintiff, who seeks punitive and exemplary damages according to proof.

30.     Plaintiff has retained private counsel to represent him in this matter and is entitled to an award of attorneys' fees.

*[CORRECTED]* FIRST AMENDED COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

SCOTT LAW FIRM  
1388 SUTTER STREET, SUITE 715  
SAN FRANCISCO, CA 94109

### FIRST CAUSE OF ACTION
#### [42 U.S.C. §1983 – UNLAWFUL TERRY STOP AS AGAINST DEFENDANTS TATUM, HUFFAKER, AND DOE 1]

31. Plaintiff hereby incorporates paragraphs 1 through 33 as though set forth in full.

32. Defendants Huffaker and Doe 1 conspired to unlawfully and without cause, and under color of state law, stop the Plaintiff while he was lawfully driving on Highway101 in the County of Mendocino. The stop was done in furtherance of a conspiracy with Defendant Tatum to unlawfully stop vehicles for the purpose of stealing cash and/or cannabis.

WHEREFORE, Plaintiff prays for relief as hereinafter set forth.

### SECOND CAUSE OF ACTION
#### [42 U.S.C. §1983 – UNLAWFUL SEARCH AS AGAINST DEFENDANTS TATUM, HUFFAKER, AND DOE 1]

33.　Plaintiff hereby incorporates paragraphs 1 through 35 as though set forth in full.

34.　Defendants Huffaker and Doe 1 conspired to unreasonably and unlawfully stop, detain, and search the Plaintiff and his vehicle. This was done in furtherance of a conspiracy with Defendant Tatum to unlawfully stop vehicles for the purpose of stealing cash and/or cannabis.

WHEREFORE, Plaintiff prays for relief as hereinafter set forth.

### THIRD CAUSE OF ACTION
#### [42 U.S.C. §1983 – FIRST AMENDMENT AS AGAINST DEFENDANTS TATUM, HUFFAKER, AND DOES 1-25]

35.　Plaintiff hereby incorporates paragraphs 1 through 37 as though set forth in full.

36.　The Plaintiff spoke publicly about matters of public concern when he protested the illegal stop and seizure. This included complaints to the Mendocino County Sheriff's Office, the Mendocino County District Attorney's Office, and other law enforcement agencies. This also included statements that appeared in local newspapers and petitioning activities with the City of Rohnert Park.

37.　In response to his activities protected by the First Amendment, the Defendants and/or other unknown co-conspirators, acting in furtherance of the conspiracy, caused the Plaintiff to be the subject of surveillance, harassment, threats and intimidation designed to chill his speech in violation of the First Amendment.

- 7 -

WHEREFORE, Plaintiff prays for relief as hereinafter set forth.

### FOURTH CAUSE OF ACTION
### [42 U.S.C. §1983 – CUSTOM AND PRACTICE AS
### AGAINST THE CITY OF ROHNERT PARK]

38.     Plaintiff hereby incorporates paragraphs 1 through 40 as though set forth in full.

39.     The City of Rohnert Park is liable for the conduct of its officers and its decision makers due to the custom and practice of its officers and agents making unlawful traffic stops on the Highway 101 corridor between Mendocino and Sonoma Counties. This custom and practice of members of the Task Force, including Defendants Tatum and Huffaker and Does 1-10, was designed and implemented with the goal of unlawfully detaining and searching motorists to steal cannabis and/or cash found in their vehicles.

40.     As implemented members of the Task Force had the discretion to (a) arrest the person(s) who possessed the cannabis and/or cash and report all or some of the property as evidence of a crime, or (b) not arrest the person(s) who possessed cannabis and/or cash, steal the property, and not report the stop and theft.

41.     Pursuant to this custom and practice scores of unlawful traffic stops were made during the past ten years. This custom and practice was known of and approved by the chain of command of the Department of Public Safety for the City of Rohnert Park, including its former Chief Brian Masterson.

WHEREFORE, Plaintiff prays for relief as hereinafter set forth.

### FIFTH CAUSE OF ACTION
### [18 USC §§ 1962(c) and (d)] – RICO AS AGAINST
### DEFENDANTS TATUM, HUFFAKER, AND DOES 1-50]

42.     Plaintiff hereby incorporates paragraphs 1 through 44 as though set forth in full.

43.     Plaintiff alleges causes of action against all defendants (excepting the City of Rohnert Park) based on 18 USC §§ 1962(c) and (d) for conducting and conspiring to conduct, respectively, the affairs of an enterprise through a pattern of racketeering activity by which Plaintiff has been injured in his business and property.

SCOTT LAW FIRM
1388 SUTTER STREET, SUITE 715
SAN FRANCISCO, CA 94109

44.    Jurisdiction and venue are provided by 18 USC 1964(c) and 28 USC 1391, respectively.

45.    The "enterprise" (18 USC 1961(4)) through which defendants conducted their racketeering activities is identified in paragraph 14 as "the Task Force."

46.    The numerous predicate crimes committed by defendants causing injuries to plaintiff and others include: (1) extortion (18 USC 1951(b)(2)); (2) obstruction of justice (18 USC 1512(b)(1)); (3) money laundering (18 USC 1956)(a)(1)(A)(i) and(a)(1)(B)(i)); and (4) money laundering by tax fraud (26 USC 7206) and evasion (26 USC 7201 and 18 USC 1956(a)(1)(A)(ii)).

47.    Defendants conducted financial transactions with the proceeds of extortion with intent to promote their continuing racketeering and with the intent to violate 26 USC 7201 and/or 7206 by filing false and fraudulent income tax returns omitting the income from their extortionate seizures of cash and proceeds of the cannabis sold after acquiring it by extortion. Furthermore, defendants conducted financial transactions to conceal or disguise the nature, source, ownership and control of the proceeds of their extortion, including the purchase of personal property such as boats, automobiles, and household goods with the unreported cash, as well as the purchase of real property such as 5452 Hall Road in Santa Rosa with unreported cash where the purchase price recorded was substantially lower than the price actually paid. This real property was then improved through the injection of more unreported cash, with the design to later sell it at a substantially increased price, thereby laundering the proceeds of the criminal enterprise.

48.    WHEREFORE, Plaintiff prays for relief as hereinafter set forth.

## SIXTH CAUSE OF ACTION
### [CIVIL CODE §52.1 - BANE ACT AS AGAINST THE CITY OF ROHNERT PARK]

49.    Plaintiff hereby incorporates all allegations set forth herein.

50.    Civil Code section 52.1 also known as the Bane Act was enacted to protect individuals like the plaintiff from interference with civil rights by threat, intimidation or coercion.

SCOTT LAW FIRM
1388 SUTTER STREET, SUITE 715
SAN FRANCISCO, CA 94109

51.     Defendants Huffaker and Doe 1 intentionally interfered with the Plaintiff's civil rights under the laws and Constitution of the State of California, including Plaintiff's right to procedural due process, his right to be free from unreasonable searches and seizures, and his rights under Article 1, Sec. 2(a) of the California Constitution. Defendants Huffaker and Doe 1 accomplished these violations through threats, intimidation and coercion by virtue of their uniforms, weapons and appearance as law enforcement officers acting under color of authority. These acts were done in furtherance of the conspiracy alleged herein.

52.     The City of Rohnert Park is vicariously liable for the acts of their employees.

WHEREFORE, Plaintiff prays for relief as hereinafter set forth.

### SEVENTH CAUSE OF ACTION
### [CONVERSION AS AGAINST THE CITY OF ROHNERT PARK]

53.     Plaintiff hereby incorporates all allegations set forth herein.

54.     Plaintiff possessed and had a right to possess medical cannabis being transported to a dispensary.

55.     Defendants Huffaker and Doe 1 wrongfully exercised control over his personal property and took possession of said property.

56.     The City of Rohnert Park is vicariously liable for the acts of their employees.

WHEREFORE, Plaintiff prays for relief as hereinafter set forth.

### PRAYER

1.     For appropriate injunctive relief designed to prevent and deter future unlawful theft and robbery of property during traffic stops by agents and employees of the City of Rohnert Park, Jacy Tatum, Joseph Huffaker, Does 1-25, and other co-conspirators to be identified;

2.     For appropriate injunctive relief designed to prevent and deter future threats, harassment, surveillance, and intimidation of the Plaintiff by the Defendants and other co-conspirators to be identified;

3.     For an accounting and return of the property stolen from the Plaintiff;

4.     For compensatory damages according to proof;

- 10 -

5. For general damages according to proof;

6. For an award of punitive and exemplary damages against individual defendants according to proof;

7. For costs and attorneys' fees;

8. For treble damages, costs, and reasonable attorneys' fees pursuant 18 USC 1964(c);

9. For such other relief as the Court may deem proper.

**JURY TRIAL DEMAND**

Plaintiff hereby requests a jury trial on all issues so triable.

**SCOTT LAW FIRM**

Dated: May __, 2018

/s/ John Houston Scott
John Houston Scott
Attorney for Plaintiff

*[CORRECTED]* FIRST AMENDED COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

# Exhibit A



# ROHNERT PARK DEPARTMENT OF PUBLIC SAFETY
# POLICE AND FIRE SERVICES

Brian Masterson, Director

PRESS RELEASE

## *Traffic Stop leads to Cannabis Possession*

**For Immediate Release**
**Issue Date: 02/13/2018**
**Time: 2:20 PM**          **Case Number: RPK 17-5373**

**Contact: Sergeant J. Tatum**      **584-2600**      **Hours Available: 0700-1700**
**Commander J. Taylor**      **584-2600**

ROHNERT PARK, CA – During the month of December 2017 members of the Rohnert Park Department of Public Safety conducted a traffic enforcement stop on a white SUV vehicle in the area of the Sonoma / Mendocino County line.

During the traffic stop the officers became suspicious of the driver's behavior and his cargo. Throughout the cargo and seating area of the SUV the officers noticed several large cardboard boxes that were partially being covered by a blanket. The officers also smelled a very strong odor of cannabis within the vehicle. The driver was questioned about possessing cannabis and told the officers he was driving "samples" for several people he knew.

During the Officers investigation it was determined that the driver was transporting a large amount of processed cannabis bud along with concentrated cannabis outside of the state and federal guidelines for possessing and transporting cannabis. The driver stated he was delivering several one pound "samples" of cannabis to a facility in The Santa Cruz County area. The driver could not produce any type of documentation which showed he was lawfully conducting legal cannabis possession or transportation.

In an attempt to identify the owners of the cannabis the driver possessed, the officers asked several questions of the driver to aid in their investigation of the lawful possession. The driver refused to provide any information regarding how he obtained the cannabis and the legitimate business the cannabis originated from.

The officers explained to the driver that based on their investigation they believed he was involved in illegal black market cannabis and acting unlawfully. Based on the lack of documentation and the driver's unwillingness to cooperate with the officer's questions, the processed cannabis was seized and booked into evidence.

During the time of this routine traffic stop no other agencies including the Mendocino County Sheriff's Office or Hopland Tribal Police were involved or assisted with the investigation.
End..

**Exhibit B**



**REDHEADED BLACKBELT**
*News, nature and community throughout the Emerald Triangle*

# ROHNERT PARK POLICE OFFICERS BEING INVESTIGATED FOLLOWING TWO INCIDENTS WHERE HUMBOLDT COUNTY CANNABIS WAS SEIZED UNDER SUSPICIOUS CIRCUMSTANCES

April 26, 2018 | Kym Kemp | 123 comments

Rohnert Park police officers Sgt. Jacy Tatum and Officer Joseph Huffaker have been placed on administrative leave and are under an internal investigation after a pair of articles we wrote describing allegations that officers had illegally seized Humboldt County grown cannabis during a traffic stop lead to an apparent cover up attempt. In our articles, Zeke Flatten drew attention to irregularities in the conduct of the police officers whom he alleges confiscated three pounds of cannabis from him on December 5 near the Mendocino/Sonoma County line.

Part of the alleged cover up included accusing Mr. Flatten of transporting 30 pounds of cannabis. According to our investigation, these pounds belonged to a

CONTACT US

Email

Search ...  🔍

**Rapid Pesticide Testing**

One-Step, Rapid Testing Results in 12 minutes

**Technology Tested and Validated by the U.S. Army and EPA**



Model:
ACE-CB1000

**To Place an Order,**
**Email:** *Rep.ANP@yahoo.com*
**or Call Direct:** *707.272.9131*

HOW YOU CAN MAKE US SMILE



*Zeke Flatten [Photo provided by him]*

Humboldt County farmer whose product was also confiscated in a suspicious manner as it was being transported south in the latter half of December. Recently, Mr. Flatten says efforts have been made to intimidate his wife and silence him.

On February 11, we posted two stories about Mr. Flatten, who alleged that two law enforcement officers, including one that he believes "with almost certainty" to have been then Hopland Tribal Police Chief Steven Hobb, stopped him and illegally removed three pounds of Humboldt County cannabis from his rental vehicle a few miles north of the Mendocino/Sonoma county line. Hobb, who has left his position with the Hopland Tribe and is now working as an officer for the city of Clearlake denies this.

Mr. Flatten alleges he was pulled over about 10 miles south of Hopland by an unmarked black SUV on December 5. Two men got out of the vehicle dressed in green uniforms with raid style vests lettered with the word "POLICE." They seized the cannabis he was carrying without leaving an inventory of the items confiscated, and left him without searching his vehicle in "less than 5 minutes." As they were leaving, one of the two men told him they were with the ATF, a federal agency that doesn't recognize state cannabis laws.

Donate

VISA

SUBSCRIBE BY EMAIL

Name *

Email *

Interested groups *
- News
- Features
- Cannabis
- Community
- All

Subscribe

ALL RECENT POSTS

- Signboard Fire Reaches 53 Acres
- Park Rangers Seek Car Burglars
- November is National Adoption Month
- Sheriff's Office Seeks Public's Help Finding Fugitives Associated With Drug Trafficking
- [UPDATE 1:37 p.m.: Road Open!] Traffic

Mr. Flatten, however, had worked extensively with the ATF on at least one case while he worked as an undercover officer. And, ironically, according to Mr. Flatten, the man's parting words, while intended to squelch any complaints, actually made him more inclined to believe the stop was illegal. He said that the ATF are professionals who collect evidence properly, unlike the officers that had confiscated his three pounds.

During the stop, both officers had handled Mr. Flatten's rental car paperwork. Later, he carefully sealed the paperwork away to preserve any fingerprints on it. But, so far, no law enforcement agency has attempted to develop prints and match them with suspects.



*Letter from Zeke Flatten alleging police corruption and detailing the dates beginning on December 8 when he had attempted to file a complaint. [Click to enlarge]*

After attempting and failing to get various agencies and departments to investigate what he felt was an illegal seizure, Flatten told us his story. (See the full stories we posted here and here.)

On February 13, two days after the stories were published, former Mendocino County Undersheriff Randy Johnson who was in charge of investigating Mr.

Accident on Briceland Road; Power Pole Blocking Road
○ First Responders Gathered in Fortuna to Learn Advanced Lifesaving Skills
○ You're Invited to an 'Exploration' of Fall Mushrooms of the Usal Redwood Forest on November 17th
○ Signboard Fire Burning Eastward
○ The Camp Fire: One Week In Is The Deadliest and Most Destructive in California History (140,000 Acres and 40% Contained)
○ This 'Shih Tzu Mix' Needs a Good Home
○ HSU Set to Receive 884-Acre Forest
○ Suspected Arsonist Arrested; Del Norte County Sheriff Gives Details on the Hunt
○ Fortuna Police Seek Woman Who Left Store With an Armload of Clothes
○ Local Appellation Exploration: Whitethorn Valley Farm

Flatten's allegations because it occurred in their jurisdiction sent us a press release he said showed that Mr. Flatten had actually been pulled over legally by the Rohnert Park Department of Public Safety (Rohnert Park's police force). He said the Mendocino Sheriff's Department would no longer be looking into Flatten's incident, because as he told us in a later interview, "Our investigation showed [the stop] was done by a legitimate agency."

The press release issued by Rohnert Park described a marijuana seizure that occurred at some unspecified time in December. (Download and read the Press Release from Rohnert Park Department of Public Safety here.) It did not name Zeke Flatten nor did it identify the date the stop allegedly occurred. According to the press release, the officers confiscated an unspecified but "large amount" of cannabis. However, there were no details that would link that stop to that of Mr. Flatten on December 5.



*Jacy Tatum being sworn in as a sergeant in 2015. [Photo from the*

However, the press release gave a case number, RPK 17-5373, and named two Rohnert Park officers as contacts — Sgt. J. Tatum and Commander J. Taylor.

When contacted, Commander Jeff Taylor said he was unable to find the report on which

○ McKinleyville Alliance for Racial Equity Hosting Film Night Tomorrow
○ Sedans Collided Near Seventh and I in Eureka



SOHUM AWARENESS



*City of Rohnert Park Police and*
*Fire's the Facebook page]*          the press release
                                      issued two days
                                      before under his

supervision was allegedly based. He asked for more
time.

After over a week of attempting to recontact him, on
February 26, Commander Aaron Johnson of the Rohnert
Park Department of Public Safety responded to us but
refused to answer any questions about the case. He did
say that both Taylor and Tatum, the officers listed on the
press release, were on medical leave.

In response to a public records act request, the city
eventually responded 24 days later with the
Incident/Investigation report for Case RPK 17-5373 as
well as some though not all of the information
requested. Though the report states that the stop
occurred on December 5, the date Zeke Flatten had been
pulled over, the time listed (1 p.m.) does not coincide
with evidence Flatten provided us, which included a
timestamped gas receipt for 11:50 a.m. in Hopland and
records of a phone call made after the incident to his
wife at 12:15 p.m. from the Starbucks parking lot in
Cloverdale. His documents indicate the stop occurred
around 12 p.m.

In addition, the vehicle listed in the report by Sgt. Tatum
is a white Mercedes SUV that did not have a license
plate. Flatten has a rental agreement corroborating his
account that he was driving a white Kia with California
plates.

Furthermore, though Flatten claimed that only three
pounds were in his vehicle, the officer filing the report,
Sgt. Jacy Tatum (who was also listed as a contact on the
press release) claimed that a "total of approximately 30
pounds was located along with several hundred

containers of concentrated marijuana hash." In addition, the attached Evidence/Property Report showed Officer Joseph Huffaker had placed 30 pounds of marijuana into evidence. (Note: The "several hundred containers of concentrated marijuana hash" were not mentioned further but we later learned they hadn't been confiscated.)

However, though the document claimed that the stop originated on December 5, the 30 pounds of marijuana they claimed they seized on that date wasn't entered into evidence until December 19–two weeks later. Chain of custody rules require officers to document where seized evidence is kept. But, there was no explanation offered for where the 30 pounds of marijuana allegedly seized two weeks earlier had been located. [Read Sgt. Tatum's account here.]

In addition, the Rohnert Park cases filed before and after the one listed on the press release were both dated December 19. Police report numbers are usually sequential and cases are normally filed in chronological order. Why would one that allegedly took place on December 5 be filed between two cases on December 19? Unless, of course, it did not take place on December 5 as claimed…

The officers' account also does not list normal information gathered during a stop–the license of the driver, the VIN number or plate number of the vehicle, and the address of the driver.

The officer's report though seemed at times very detailed. Sgt. Tatum described, for instance, that a California Highway Patrol officer and his trainee arrived at the scene to "assist us." The details led this reporter to believe that the report likely described a real stop–but not one that involved Mr. Flatten.

Our investigation led to a Humboldt County farmer whose cannabis had been seized from the Mercedes Benz and, eventually, also the driver, both of whom wish to remain anonymous. The driver said he had gotten his temporary California cannabis permit and he had headed south in the last half of December from Humboldt County with 30 pounds and also with containers of hash.

He said he was stopped by two law enforcement officers in a black unmarked SUV. He said, "They were wearing almost civilian clothes, but they were wearing a tactical vest with their [personal] name on the vest."

He said he was almost immediately suspicious. As with Mr. Flatten's stop, the officers didn't follow normal procedures. "[The officer] didn't ask for my registration," the Benz driver said. "He asked me immediately to get out of the car. He didn't run my license."

When asked if he had any marijuana, he said he told the officer that he did but told the officer, "Everything is legal" and offered to show his manifest. The officers requested to see his cargo. One of the things the Benz driver said he found disturbing is the officers asked him several questions about what strains



*Officer Joe Huffaker after receiving "a lifesaving award" in 2015. [Crop of a photo on the* City of Rohnert Park Police and Fire Facebook page*]*

of marijuana he had and didn't seem interested at all in the hash he was also carrying which seemed odd to him. The officers told him they were taking the marijuana but would leave him the hash. The Benz driver said because he felt he was legally transporting the 30 pounds of cannabis, he argued with the officers. "At least give me an inventory [of the items taken]," the Benz driver said he asked the officers. He said he intended to use the receipt from the officers to have his attorney argue for the return of the cannabis.

According to the Benz driver, one of the officers began to get hostile and started threatening that they could arrest him and also confiscate his hash. He said they told him that they were "associated with the federal government" and didn't have to follow state law.

Eventually, said the Benz driver, a California Highway Patrol vehicle with two officers drove up and parked behind the first officers' vehicle. Though the Benz driver never actually spoke to the CHP, at this point, he said he began to believe the stop must be legitimate and stopped arguing with the original officers. He left the scene still carrying the containers of hash but leaving behind the 30 pounds of cannabis with the officers.

He does say that afterward, like Mr. Flatten, he also called the Mendocino County Sheriff's Department and lodged a complaint. The Mendocino County Sheriff's Department says they don't have a record of either complaint.

Capt. Bruce Carpenter of the California Highway Patrol confirmed that two of his officers, though they couldn't remember the exact date, did remember coming across the two Rohnert Park officers after the officers had pulled over the Mercedes Benz. He wrote, "They had no contact with the driver of the stopped vehicle and did

not know what actions were ultimately taken by the Rohnert Park Officers."

At the end of the Incident/Investigation Report filed by Sgt. Tatum, he states that the case was forwarded to the "DA's Officer for filing." However, an aide for the Sonoma County District Attorney told us, "I've looked every which way in our system and we do not have it."

A report generated from Rohnert Park shows that Officer Joe Huffaker entered the 30 pounds of marijuana as "Found Property"—they were not originally booked as evidence but rather as incidental items. That, along with the officers' failure to gather basic evidence such as the Mercedez Benz's driver's license number seems to indicate that the 30 pounds were never intended to be part of a criminal case.

Terry Simpson from Simpson Investigative Services Group contacted this reporter and Zeke Flatten several times during the course of what he characterized as an "Administrative Investigation for the City of Rohnert Park on the complaint of Mr. Flatten."

Simpson said that he believes the two stories posted February 11 on this website detailing Mr. Flatten's allegations about having three pounds of cannabis stolen by law enforcement officers led to the Rohnert Park Department of Public Safety press release on February 13. He also revealed that he believes that the investigative report written by Sgt. Tatum which accuses Zeke Flatten of having "30 pounds...along with several hundred containers of concentrated marijuana hash" was not written until February 20, a week after the press release and around 11 weeks after Mr. Flatten was stopped by law enforcement on December 5.

Simpson stressed several times, verbally and in writing, that neither the City of Rohnert Park nor he were

attempting to build a case against either Mr. Flatten or the Mercedes Benz driver. He did write to Mr. Flatten that "the officers are on Admin leave and will stay on it until I'm done."

Later, he told this reporter, "People that are doing wrong are going to pay for it." He stressed that did not at all mean Zeke Flatten or the Mercedes Benz driver.

At one point on this last Tuesday, he asked the question at the bottom of this investigation…"What the hell happened to Mr. Flatten's 3 pounds?" Likely, only the officers involved in Zeke Flatten's stop can answer that question…and they're not talking.

Meanwhile, Mr. Flatten says that he discovered in the last week that his phone has been cloned. According to Slate Magazine, this lets the person with the clone "intercept incoming messages and send outgoing ones as if [the clone] were the original. If both phones are near the same broadcast tower, you can also listen in on calls."

Over the weekend, Flatten wrote this reporter, "Everything I've done on my phone has been [sent] to another device for an undetermined amount of time. There's evidence I've been under digital and physical surveillance and most likely they are aware [the clone] has been discovered."

He also believes that his wife was followed in her vehicle and briefly cornered as an intimidation tactic. Flatten says he believes the cloning and the intimidation have occurred because someone "want[s] the rental contract and the potential fingerprint evidence." He said that the rental car contract handled by the officers during his stop could lead to at least one other officer besides Sgt. Tatum and Officer Huffaker being involved in taking his three pounds and not entering them into evidence.

# Rohnert Park cop at center of investigation into drug seizure

**JULIE JOHNSON**
THE PRESS DEMOCRAT | June 22, 2018



↖ Follow this story 

Rohnert Park Public Safety Sgt. Brendon "Jacy" Tatum is no longer employed by the city amid an investigation into a mysterious drug seizure in Mendocino County, city officials said Friday.

Tatum has previously been decorated by the city for his work seizing suspected illegal drugs and cash on Highway 101, often far outside city limits, even outside Sonoma County.

But questions surrounding a December 2017 traffic stop in Mendocino County led the city earlier this year to put Tatum and another officer, Joseph Huffaker, on paid administrative leave and launch an investigation.

Zeke Flatten, the driver who was pulled over on Dec. 5 near Frog Woman Rock in southern Mendocino County, said he believes he was robbed of 3 pounds of cannabis by two police officers in an unmarked patrol vehicle.

No local, state or federal law enforcement agency has so far come forward to say its officers were involved.

Huffaker remains a city employee, Rohnert Park Assistant City Manager Don Schwartz said. He declined to describe the scope of the investigation other than to say they are looking into Flatten's case.

"Jacy Tatum is no longer employed by the city," Schwartz said. "I can just say two things: He's no longer employed by the city and the investigation continues, and that's all I can tell you."

Tatum, 35, had served in the department for 15 years and was promoted to sergeant in 2015.

Schwartz said California laws barring release of police personnel information prohibit him from answering questions about the exact end date of Tatum's employment or the reason for his departure, such as whether he quit or was fired. He also said those laws prevented him from describing the scope of the investigation.

"We're investigating what happened regarding Zeke Flatten and his concerns," Schwartz said.

Tatum's lawyer couldn't be reached Friday.

Flatten was pulled over on southbound Highway 101 between Hopland and Cloverdale in Mendocino County about noon Dec. 5 as he drove from Garberville to Santa Rosa. Flatten, who lived part time in California at the time and has since moved, said he was a licensed driver and had a medical marijuana recommendation issued in California.

The officers arrived in an unmarked dark SUV with California exempt license plates and wore generic police vests and no visible badges or uniforms, according to Flatten. They told Flatten they could search the vehicles of people with medical marijuana recommendations, he said.

The officers opened a sealed box they found in the trunk holding 3 pounds of cannabis Flatten said he had received from a family friend in Humboldt County. They took it and left without citing him for a traffic violation or drug crime.

"He said, 'We're with the ATF. Marijuana is taking over in California like cigarettes, you may get a letter from Washington,'" according to Flatten. "He handed (over) my license and rental car contract and said, 'Have a nice day.'"

For six months, Flatten has been trying to figure out who pulled him over. Flatten contacted the FBI and sent letters to the Mendocino County Sheriff's Office and grand jury asking for an agency to step forward and identify the officers. He's called reporters, trying to get his questions answered.

FBI spokesman Prentice Danner said the agency looked into Flatten's complaint but dismissed it after determining Flatten didn't seem

We use cookies to optimize your experience, analyze traffic, and personalize content. To learn more, please visit our Privacy Policy. By using our site without disabling cookies, you consent to our use of them.

Accept

Public Safety Department.

A copy of the Rohnert Park incident report received by The Press Democrat redacts the name of the driver, but Danner confirmed the name on the report was Ezekial Flatten.

"If there was an abuse of power, for sure, our public corruption squad is here for just that reason," Danner said. "But this didn't measure up to that."

But those diverging facts — key details including the make and model of the vehicle, the time of day and the amount of marijuana — reveal questions about Rohnert Park police's presence in Mendocino County and the accuracy of the department's official police reports.

From the outset, Flatten said he believed it was tribal police with the Hopland Band of Pomo Indians who pulled him over because he viewed the tribal police department's website and said one of the officers looked like the tribe's then-Chief Steven Hobb.

But in February, Flatten's name turned up on an internal Rohnert Park police report for a Dec. 5 traffic stop. Tatum was the author.

Rohnert Park officers — most notably Tatum — are known for patrolling an area known in the cannabis trade as "the Gauntlet," the portion of Highway 101 in southern Mendocino County and northern Sonoma County viewed as a gateway between the marijuana- growing Emerald Triangle region and the San Francisco Bay Area.

During an interview last week, a lawyer representing both Rohnert Park officers under investigation said Tatum mistakenly added Flatten's name to a report about an incident involving another driver. That driver had 30 pounds of cannabis in a Mercedes-Benz in addition to bottles of concentrated cannabis, according to a police report obtained by The Press Democrat. Flatten was driving a Kia SUV, according to his car rental records.

Tatum wrote the police report with Flatten's name after being asked to do so by the Mendocino County Sheriff's Office, according to Justin Buffington, an attorney with Pleasant Hill-based Rains Lucia Stern St. Phalle and Silver.

Tatum apparently produced the incident report about the traffic stop weeks after it occurred, and he hadn't documented the name of the Mercedes driver because the officers may not have checked his driver's license through dispatch, his lawyer said.

"They got the wrong name," Buffington said. "The name was wrong, and the date of the incident (was wrong). People make mistakes, but they rely on information given to them."

Mendocino County Sheriff Tom Allman said he did ask Rohnert Park police to put out information about the December traffic stop, if it was theirs, in order to clear up the confusion. Flatten had sent complaints to the Sheriff's Office and the Mendocino County Grand Jury.

"I certainly did that because there was this discussion and underlying thought that it was someone from our agency" who pulled Flatten over, Allman said. "I can clearly say that neither the Mendocino County Sheriff's Office nor the (Mendocino) Major Crimes Task Force had any involvement with this incident."

On Feb. 13, Tatum issued a news release about a December traffic stop on Highway 101 near the Mendocino-Sonoma county line. In the statement, he noted that "no other agencies including the Mendocino County Sheriff's Office or Hopland Tribal Police were involved or assisted with the investigation."

Hobb, who briefly served as police chief for the Hopland Band of Pomo Indians late last year, said during an interview he was not involved in any traffic stops for law enforcement purposes on Highway 101 in December, including the one involving Flatten. Hobb said tribal police "don't have authority to do traffic stops off the reservation."

"The guy (Flatten) is a drug dealer, I don't know why you're following up on it," Hobb said during a June 14 phone call. "Drugs are bad. Marijuana is bad. You just want to spew lies."

Hobb said he left the tribal police chief job because the tribe's involvement with marijuana cultivation meant "I couldn't do my police work," then he softened his tone, adding "there are decent people there trying to get by." Hobb said he has a job at a different department, but he declined to say where.

We use cookies to optimize your experience, analyze traffic, and personalize content. To learn more, please visit our Privacy Policy. By using our site without disabling cookies, you consent to our use of them.

Accept

enforcement.

Hobb said the tribal police don't drive the type of vehicle Flatten said was used by the officers who pulled him over — what appeared to be a dark-colored Ford Explorer Police Interceptor SUV.

"It 100 percent wasn't me, no," said Hobb. "That guy (Flatten) shouldn't be trafficking marijuana."

For his part, Flatten said he doesn't believe Tatum was involved in his traffic stop. But he said it was wrong for Tatum to include his name on an internal police report about a criminal investigation that didn't involve him.

"I'm pretty sure Jacy wasn't there," Flatten said of the day he was pulled over. "But he committed other crimes against me. He framed me when he wrote that report."

You can reach Staff Writer Julie Johnson at 707-521-5220 or julie.johnson@pressdemocrat.com. On Twitter @jjpressdem.

**Trending Now**

Ads by Adblade

We use cookies to optimize your experience, analyze traffic, and personalize content. To learn more, please visit our Privacy Policy. By using our site without disabling cookies, you consent to our use of them.

Accept



THE CALIFORNIA REPORT

# 'Highway Robbery': Drivers Allege Rohnert Park Police Illegally Seized Cannabis, Cash

Updated July 3, 2018 at 11:30 a.m.

This story was reported in collaboration with the North Coast Journal and independent reporter Kym Kemp.

Huedell Freeman was heading south on Highway 101 through Cloverdale and was just over the Sonoma County line when he said a police squad car flipped a U-Turn across a 25-foot grass median and pulled up behind him with lights flashing.

> 'He grinned and smiled at me and did not respond. At that moment I knew I'd been had. I knew that this was not a normal traffic stop.'
>
> — Huedell Freeman

Freeman said he was carrying 47 pounds of marijuana in his rental car that day, Dec. 29, 2016, but said he wasn't too worried about the weed because he had a permit to grow medical cannabis in Mendocino County. He was driving it down to his client, a licensed dispensary called The Higher Path in Sherman Oaks, near Los Angeles. And, he said, he had the paperwork to prove it.

It struck Freeman as odd, though, that the two police officers pulling him over weren't from Cloverdale. They were from Rohnert Park, some 40 miles south on 101. Freeman said he'd been obeying the traffic laws, and the cruise control on the car was set at the speed limit. He expected the traffic stop to end quickly.

SPONSORED BY



How can we help Californians get the care they need?
CHCF                                    www.chcf.org

He didn't expect to lose a year's worth of income.



As Rohnert Park Department of Public Safety Officer Joseph Huffaker approached the car, Freeman said he rolled down his window and asked why he'd been pulled over.

Freeman said Huffaker told him his vehicle had "touched the white line" on the side of the road.

"I had not, so I looked at him, and I said, 'No I didn't,' " Freeman said. "And he grinned and smiled at me and did not respond. At that moment I knew I'd been had. I knew that this was not a normal traffic stop."

Then Huffaker asked if he had any marijuana in his car, Freeman said.



A Rohnert Park police squad car. (Sukey Lewis/KQED)

"Yes, I do," Freeman remembered saying. He also carried a large battered black leather briefcase filled with documentation -- what he calls his "compliance briefcase" -- and he said he provided the officer with a grower's permit issued by the Mendocino County Sheriff's Office, contact information for The Higher Path dispensary with which he had an agreement to both grow and transport marijuana, and his compliance lawyer's information.

Essentially, Freeman was trying to be as legitimate as he could be.

Freeman said that as he and Huffaker talked, another Rohnert Park officer, Sgt. Jacy Tatum, stood off to the side, barely speaking except to ask Freeman at one point about the strains of marijuana he was carrying.

The two officers would go on to seize that marijuana, and Freeman hasn't seen it since.

Freeman's account of his run-in with Rohnert Park police echoes those of eight other drivers who say a group of officers from the city conducted pretextual traffic stops -- those that enable authorities to detain suspects for investigation of other matters -- with the goal of unlawfully seizing marijuana and cash. Four people allowed us to share their stories publicly, while five others would tell us about their encounters only if we agreed not to name them, saying they feared police retaliation.

Their stories suggest a pattern of questionable and potentially illegal stops and seizures over the past three years by officers from a small city along a major marijuana transportation corridor.

## 'When I say highway robbery, I really mean it.'

— Izaak Schwaiger,
Attorney, former prosecutor

The city of Rohnert Park said in a statement that its police officers "joined other law enforcement agencies in drug interdiction efforts" along Highway 101 seeking drugs including "methamphetamines, opioids, cocaine, ecstasy and

marijuana." But the city says it ceased "most interdiction efforts" related to marijuana in 2017.

There is a financial benefit to the city for this work. Through a legal process called asset forfeiture, both the Rohnert Park Department of Public Safety and the Sonoma County District Attorney's Office get to keep a cut of seized cash suspected to be the proceeds of a crime.

A report issued by the California Attorney General shows that from 2015 to 2016, the Rohnert Park Department of Public Safety received more than $1 million in seized cash. The Sonoma County District Attorney received $188,419 of the money from assets seized.

Tatum was responsible for much of that asset forfeiture windfall to his local department. In 2015, the mayor publicly recognized him for his drug prevention work. Tatum thanked the City Council for allowing him the opportunity to "fight the war on drugs."

But Tatum has another reputation: A growing chorus of defense attorneys say he's a rogue cop. He's being sued for unlawfully taking a man's cash, and he has a documented history of dishonesty on the witness stand.

"When I say highway robbery, I really mean it," Sonoma County defense attorney Izaak Schwaiger said. "Officer Tatum has been involved in dozens of questionable traffic stops both above and below the Mendocino-Sonoma County line, where he has seized marijuana farmers' product and/or their cash and given them no receipt and no criminal charges were ever brought."

Now Tatum and his partner, Joseph Huffaker, are under investigation by the city of Rohnert Park. They are both on leave, according to their attorney.

## Allegations of a Cover-Up

Rohnert Park began an administrative investigation around April of this year after independent reporter Kym Kemp published a series of articles about another suspect traffic stop and marijuana seizure.

Texas resident Zeke Flatten said he was driving south on Highway 101 last December, when an unmarked black Ford Police Interceptor pulled him over just north of the Mendocino County line, about 50 miles north of Rohnert Park.



Jacy Tatum is sworn in as a Rohnert Park police sergeant in July 2015. (City of Rohnert Park Police & Fire Facebook page)

Flatten, like Freeman, was also in a rental car and said he, too, was not speeding or violating any traffic laws. He pulled over and showed the officer his driver's license and the rental agreement for his car.

The officers did not identify what agency they were with, Flatten said, and he noticed they were not wearing departmental police badges or identifying name tags.

"At that point I really felt something was wrong," Flatten said.

Flatten said he had 3 pounds of marijuana in his car from a farm in Humboldt County and he was taking it to a laboratory in Santa Rosa for testing. He said he was working on developing a number of cannabis products he hoped to bring to market after California's law allowing recreational use for adults kicked in.

Flatten also offered to show the officers his doctor's prescription for medical cannabis, but he said they weren't interested.

The officers said they were working for the ATF -- the U.S. Bureau of Alcohol, Tobacco, Firearms and Explosives -- according to Flatten. He said they took his marijuana and left him on the side of the road, all in just a few minutes. They did not issue him a citation or arrest him.

Flatten reported the Dec. 5 incident to the Mendocino County Sheriff's Department, the Mendocino County district attorney, the Mendocino County grand jury and the FBI. Kemp spoke with an ATF spokesperson who said the agency wasn't involved in Flatten's traffic stop.



**ROHNERT PARK DEPARTMENT OF PUBLIC SAFETY**
**POLICE AND FIRE SERVICES**

Brian Masterson, Director

PRESS RELEASE

### *Traffic Stop leads to Cannabis Possession*

**For Immediate Release**
**Issue Date: 02/13/2018**
**Time: 2:20 PM**     **Case Number: RPK 17-5373**

**Contact: Sergeant J. Tatum**    **584-2600**     **Hours Available: 0700-1700**
           **Commander J. Taylor**    **584-2600**

ROHNERT PARK, CA – During the month of December 2017 members of the Rohnert Park Department of
Public Safety conducted a traffic enforcement stop on a white SUV vehicle in the area of the Sonoma /
Mendocino County line.

During the traffic stop the officers became suspicious of the driver's behavior and his cargo. Throughout the
cargo and seating area of the SUV the officers noticed several large cardboard boxes that were partially
being covered by a blanket. The officers also smelled a very strong odor of cannabis within the vehicle. The
driver was questioned about possessing cannabis and told the officers he was driving "samples" for several
people he knew.

From a Rohnert Park Department of Public Safety press release issued on Feb. 13, 2018.

"Mr. Flatten did contact the FBI and the information he
provided, we were not able to corroborate it as reported," FBI
spokesperson Prentice Danner said.

The Mendocino County Sheriff's Department said it wasn't
their case and pointed to a press release from Rohnert Park
police written on Feb. 13, 2018, not long after Flatten's stop.
The statement, written by Tatum and Cmdr. Jeff Taylor, touted
a large "black market" marijuana bust on Highway 101 during
the month of December.

Rohnert Park produced an incident report of the Dec. 5 stop of
Flatten, also written by Tatum, that diverges in many places
from Flatten's account.

The redacted report doesn't include any names. It describes a
traffic stop involving a white Mercedes-Benz with no license
plates. Yet Flatten said he drove a Kia rental car with California
license plates. The report says that 30 pounds of marijuana
and several hundred containers of hash were seized from the

person driving the Mercedes. Flatten maintains he had 3 pounds of marijuana with him.

Records show that Officer Huffaker did book 30 pounds of seized marijuana into evidence, but not until Dec. 18, 2017, nearly two weeks later. The several hundred containers of hash are not mentioned in the evidence log.

Flatten doesn't believe Tatum was among the two officers who stopped him, although he does think Rohnert Park Officer Huffaker was one of the officers who pulled him over.



████ refused to provide any information regarding how he obtained the cannabis and the legitimate business the marijuana originated from. █████ refused to provide any further information to assist on our investigation. I explained to █████ that the marijuana would be seized if he could not provide legal possession paperwork. He replied, "Do what you gotta do."

I explained to █████ that based on my investigation I believed he was involved in illegal black market marijuana and acting unlawfully. Based on the lack of documentation and █████ unwillingness to cooperate with our questions, the processed cannabis was seized and booked into evidence. █████ requested a receipt for the marijuana. I explained to him that receipts for evidence were not given out per our department policy, combined with the fact that he was not the owner, nor did he want to provide me with a name to list as the owner(s).

The above items were seized and booked into evidence at Rohnert Park DPS Main Police Station under case number 17-0005373.

Case Forwarded to The DA`s Officer for filing a violation of 11357(c) 2 H&S. Possession of more than one ounce of marijuana against █████.

An excerpt from the incident report written by Jacy Tatum and referenced in response to Zeke Flatten's allegations.

The report says a CHP officer and trainee assisted on Flatten's stop. But a CHP spokesman wrote in an email, "There is no dispatch record of us assisting with this incident and no one recalls it."

Flatten said he thinks Tatum crafted this report after the fact to cover up an illegal stop and seizure by police officers.

"I felt very strongly that I was robbed by legitimate police officers," Flatten said.

Finally, the report said the case was referred to the Sonoma County district attorney for prosecution. The Sonoma County District Attorney's Office has no record that Rohnert Park ever referred a case against Flatten. There are no charges against him.

The city of Rohnert Park would not respond to questions about this incident, but it is investigating. Attorney Justin Buffington, who is representing Tatum and Huffaker, confirmed the officers are on leave pending an administrative investigation related to Flatten. He stressed that the city's probe is not a criminal investigation.

Tatum and Huffaker did not wish to comment for this story, according to Buffington.

### Seizing Cash

This is not the first time Rohnert Park police officers have faced allegations of unlawful seizure. A gambler from Las Vegas named Lucas Serafine alleges in a lawsuit against the City of Rohnert Park that Tatum and Rohnert Park police Officer Nick Miller unlawfully seized more than $120,000 from him on March 10, 2016.

Serafine was also in a rental car traveling on Highway 101 near Cloverdale with a friend when he said the two officers pulled him over for allegedly driving too fast in the rain.

Serafine said he was headed to a high-stakes poker game at the Bear River Casino in Humboldt County and that the large amount of cash in the car was cash from a lawsuit he settled with the California Department of Corrections, and a workers' compensation claim.

The officers suspected Serafine's money was related to drug purchase or sales, according to court documents, and seized it.

"He [Tatum] looks me in the eyes, pointing his finger pushing on my chest as he does it," Serafine remembered Tatum saying before he and Officer Miller drove away, "'I took $1.2 million off the road this year. Nobody shows up for it and neither will you'."



Highway 101 in Cloverdale. (Adam Grossberg/KQED)

A review of incident reports provided by Rohnert Park in response to a public records request back up the statement. KQED reviewed 23 incident reports on traffic stops involving Tatum. The city continues to provide more reports on a rolling basis.

Between late 2013 and the end of 2016, Tatum was involved in stops that resulted in the confiscation of well over $1 million in cash, according to the incident reports released so far.

The department saw a 182 percent increase in funds from asset forfeitures between 2015 and 2016. According to data reported

to the California Attorney General's Office, Rohnert Park police netted $756,062 in 2016, an increase of nearly half a million dollars from the year before.

In Serafine's case, $121,920 was logged into evidence and turned over to the district attorney for asset forfeiture proceedings.

On June 28, 2016, Serafine's lawyer sent a letter to Rohnert Park contesting the amount of money seized, but Serafine says he did not get a response. Serafine said he actually had $132,000.

The district attorney brought a civil action to seize Serafine's cash -- a process called asset forfeiture. Serafine provided the prosecutors with proof of income for most of the cash and eventually got $100,000 of his money returned to him.

The Sonoma County District Attorney's Office declined to comment on Serafine's asset forfeiture case or to say whether they investigated Serafine's dispute about the amount of cash seized.

The city is fighting Serafine's lawsuit alleging police officers inappropriately confiscated his cash. A trial in that case is scheduled for November of this year.

Serafine has a criminal history, including a conviction in 2001 when he was 18, for unlawful sex with a minor. Serafine was forthcoming about his record.

'That is a very strong indication, based on the law, that the complaints, assuming

there were such, were deemed frivolous by
the department.'

— Justin Buffington,
Attorney for Sgt. Jacy Tatum and Officer Joseph Huffaker

And Zeke Flatten admits he didn't have a legal license to
transport marijuana, but he said that still doesn't give law
enforcement the right to essentially steal from people.

"I knew that what these officers were doing was so much of
abuse of power and so just wrong for police officers to be doing
that," Flatten said.

Tatum's attorney, Justin Buffington, said he is not under
investigation for any additional matters.

"To my knowledge, none of the other matters [aside from the
Flatten stop] that you referenced are, or have been, the subject
of internal investigations undertaken by the department,"
Buffington wrote in an email. "That is a very strong indication,
based on the law, that the complaints, assuming there were
such, were deemed frivolous by the department."

**An Unreliable Witness**

At least a year before Flatten went public with his allegations
against Rohnert Park police, Tatum was known by prosecutors
to have written false information in police reports and to have
testified dishonestly in court.

"He [Tatum] doesn't have a problem lying, and he does so with
some regularity," said Izaak Schwaiger a civil rights and
defense attorney who has had run-ins with Tatum.

Schwaiger, who was a Sonoma County prosecutor from 2010 to 2012, said then-officer Tatum already had a reputation.

"His testimony was not of the highest quality," Schwaiger said. "And sometimes gave rise to people disbelieving it, even on the side of law enforcement."

Later, when Schwaiger became a defense attorney, the stories about Tatum mounted.

KQED has spoken to five defense attorneys in Sonoma County who say their clients alleged that Sgt. Tatum and often his partners stopped them on a flimsy pretext, fabricated police reports, and unlawfully seized cash and marijuana.

In 2016 Sgt. Tatum entered false information into an incident report. He and Huffaker pulled over a New Jersey man named Konstantine Charalidis, who the DA charged with having a concealed weapon. Charalidis' attorney, Evan Zelig, provided KQED with Huffaker's body-camera footage from the stop. It contradicts the police report written by Tatum.

The incident report says that a knife taken off Charalidis was "completely concealed" by his clothing. Huffaker's body-camera footage shows Charalidis immediately pointed out both knives, neither of which were concealed.

"There's a difference between incorrect police reports and police reports that are falsified," Zelig said. "The one with Mr. Charalidis, this was not incorrect. It was just falsified. The facts in there were not true."

In the body-camera footage, both Huffaker and Tatum ask repeatedly whether there is any cash in the car, which

Charalidis and his friend deny. Then Tatum says on the body-camera video he found $10,000.



A screenshot from his body camera footage captures Rohnert Park Department of Public Safety Officer Joseph Huffaker reaching to remove two knives from Konstantine Charalidis' clothing after Charalidis immediately told the officer he had them. Both knives were unconcealed throughout the encounter. (Courtesy of Evin Zelig)

Zelig said the officers became angry at Charalidis because he wouldn't admit that $10,000 was related to illegal activity, which would have allowed them to seize it.

"Give us fucking bullshit ass fucking answers, that's what happens," one of the officers says on the body-camera footage as Charalidis stands handcuffed. "We're going to see a judge."

The police report does not mention any money.

"It was absolutely an unlawful arrest," said Zelig, "that they did solely because he would not give them the money."

Prosecutors dismissed the charges against Charalidis because of the body-camera footage. Zelig says his client still had to pay attorneys fees, and deal with the hassle of a California court case while living in New Jersey.

In a separate 2016 case, Schwaiger suspected Tatum was lying about his justification for a traffic stop. He collected sworn statements from three other defense attorneys who said Tatum was dishonest and detailed specific instances of him lying.

Tatum's dishonest testimony in that case led him to be placed on a list of officers with credibility issues maintained by the Sonoma County District Attorney's Office, Schwaiger and other defense attorneys said. Tatum gave shifting explanations in an attempt to justify the traffic stop and was caught lying on the witness stand. A judge dismissed the case.

> 'If or when concerns are raised about police officer conduct, we take the concerns seriously.'
>
> — Don Schwartz,
> Rohnert Park Assistant City Manager

Being on what's called "the Brady list" meant, after that case, prosecutors had a duty to disclose evidence of Tatum's past dishonest testimony to defense attorneys, who can use it to attack his credibility if he's called as a witness.

The Sonoma County District Attorney's Office declined to comment on Tatum's credibility as a witness, but no perjury charges have been filed against him.

Schwaiger and another defense attorney say they were both interviewed by an investigator for the DA's office regarding Tatum, but prosecutors would not say what the nature or the outcome of this investigation was.

"People want to believe police officers because we don't want to live in a world where cops can't be trusted," Schwaiger said. "That's a scary world. Those are the people that are here to protect us. They're the people here to keep us safe. And if they can't be trusted, who can be?"

## Broken Trust

For years, unlawful seizures and asset forfeitures were often considered by people in the marijuana industry as the cost of doing business. But now, legalization is offering men like Huedell Freeman a path to legitimacy. He pays taxes and permit fees -- those are the costs of doing business.

Freeman remembered the day in 2015 when a deputy from the Mendocino County Sheriff's Office took his picture in front of his cannabis farm.

"'You don't know how weird this is for me'," Freeman recalled saying to the deputy. "And he laughed and he said, 'I think I do,' he said. 'We used to call this evidence. Now we call it verification'."

It was scary to go legal, Freeman said, but it felt good, too: no more lying, no more hiding, no more risk of going to prison for doing what he loves. Now he grows more than a dozen varieties of cannabis that are tailored to specific medical ailments.

"I don't care about the 22-year-olds that want to get stoned and park on the couch," he said. "I have nothing against that, but that's not why I do this."



Huedell Freeman. (Sukey Lewis/KQED)

Freeman said he explained all this to Tatum and Huffaker. He had nothing to hide. He gave them the name and phone number of Colin Stewart, manager and partner at The Higher Path dispensary in Sherman Oaks. Huffaker spoke to Stewart and to Freeman's attorney, Hannah Nelson, who both confirmed what Freeman said: His cannabis was for medicine, not the black market. He was legit.

But the officers came back and told Freeman that they were seizing his property because he did not have a license issued by the state to transport marijuana.

The state Bureau of Cannabis Control declined to comment for this story and refused repeated requests to explain licensing and regulations for transporting marijuana legally in California.

The officers wrote Freeman a citation for possessing more than an ounce of marijuana, but they did not give him any

documentation for the property they seized.

The Sonoma County District Attorney's Office initially said no case against Freeman was ever referred to them. However, on July 2, the district attorney's office provided an undated referral from Tatum requesting Freeman be charged with unlawfully possessing marijuana. Prosecutors did not file charges in the case.

Freeman said he called the Rohnert Park Department of Public Safety the next day. Sgt. Eric Matzen assured him that his cannabis was safe and that if the department determined its legality, he would get it back, Freeman said.

Freeman's attorney wrote to the city and asked for it to return her client's property. But the city of Rohnert Park never returned Freeman's cannabis.

On June 27, 2017, he filed a claim against the city of Rohnert Park for the value of his cannabis. The city has rejected his claim.

Assistant City Manager Don Schwartz would not respond to a series of detailed questions about traffic stops by its officers.

"Rohnert Park is committed to compliance with the law and the constitution and its mission to serve and protect the public," Schwartz wrote in an emailed response. "If or when concerns are raised about police officer conduct, we take the concerns seriously and investigate as each situation may warrant. Once all of the facts are known, we take any and all appropriate measures."

The statement continued: "Rohnert Park participated in these [interdiction] efforts to reduce the flow of illegal drugs to

Sonoma County, including the City of Rohnert Park," Schwartz wrote. "Recreational marijuana was illegal until January 1, 2018."

Freeman said he has still not recovered from the financial loss of his property. But he said even harder to recover is the faith he lost in a system that promised to protect him if he came out of the shadows.

"They broke my trust," Freeman said.

**Update, 12:05 p.m. Saturday, June 23:** Jacy Tatum no longer works for the city of Rohnert Park, according to Assistant City Manager Don Schwartz. He said Officer Joseph Huffaker is still employed by the city. Schwartz said an investigation into the officers is ongoing.

Correction: KQED learned after publication that Rohnert Park police requested prosecutors file charges against Huedell Freeman. This post has been edited to reflect the new information.

Julie Small of KQED News and Kym Kemp contributed to this report.

KQED NEWS    Sign up for our newsletter.

| Enter Email Address | SIGN UP |

COPYRIGHT © 2018 KQED INC. ALL RIGHTS RESERVED. | TERMS OF SERVICE | PRIVACY POLICY | CONTACT US

# Ex-Rohnert Park sergeant under investigation earned reputation with Highway 101 stops

**JULIE JOHNSON**
THE PRESS DEMOCRAT | July 8, 2018



 **Follow this story** ⓘ

Over nearly 15 years as a Rohnert Park police officer, Brendon Tatum led local law enforcement missions to disrupt the flow of illegal drugs into Sonoma County, netting Rohnert Park hundreds of thousands of dollars in seized assets through traffic stops.

Tatum, who goes by his middle name Jacy, built a reputation as an aggressive cop for his work stopping cars on a rural stretch of Highway 101 near the Sonoma-Mendocino county line — some 40 miles north of the city limits — in operations to find black-market marijuana, other illegal drugs and cash.

The highway runs alongside the Russian River and links the marijuana-growing Emerald Triangle region to the north and the urban San Francisco Bay Area to the south.

But the man once honored by Rohnert Park for his highway seizures is no longer employed by the city. Rohnert Park officials will not say why but confirm he is under investigation in connection with a puzzling December traffic stop and marijuana seizure across the county line in Mendocino County involving a pair of officers who six months later remain unidentified.

Tatum's departure comes amid increasing public scrutiny of a range of his on-duty actions and persistent questions about missing cash and seized marijuana. It has raised questions about why Rohnert Park routinely sent its officers to the northern edge of the county to conduct highway seizures even with a staffing shortage and after other agencies stopped.

The attention also has spotlighted another side of Tatum's reputation, one discussed for years among local defense attorneys who have faced off with him in court and among

We use cookies to optimize your experience, analyze traffic, and personalize content. To learn more, please visit our Privacy Policy. By using our site without disabling cookies, you consent to our use of them.

Accept

One is a Mendocino County cannabis dispensary owner and longtime grower, Hue Freeman, who believes Tatum illegally seized more than $65,000 worth of marijuana he was bringing to a dispensary. He said he feels emboldened to speak out about his case now that others are questioning Tatum's policework.

"I didn't want to be the only one out there. I didn't want to be the tip of the spear," said Freeman, 60.

Tatum stands by his conduct during his career as a police officer and firefighter with the Rohnert Park Public Safety Department, and he rejected characterizations of his on-duty behavior as unprofessional or unethical.

"That is their opinion, but I disagree with their opinion," Tatum, 35, said in an interview. "I served and protected my community and made a positive impact and changed people's lives for the positive, the best I could."

The encounter with Freeman is among a number of troubling run-ins with Tatum described by defendants and lawyers who've criticized his police work, pointing to what they said were questionable traffic stops, searches and seizures.

Interviews with people he pulled over on the road, as well as a half-dozen defense attorneys and several police officers, including members of his own department, also reveal a pattern of aggressive confrontations — both with people under investigation by Tatum and with lawyers he's accosted at their workplace and at the Sonoma County courthouse.

In the courtroom, defense attorneys have uncovered cases where Tatum violated his own department policies, including a September 2016 encounter where the sergeant repeatedly turned off his body camera while investigating a fender bender and ordered a junior officer to turn his camera off, according to court filings. Tatum then failed to properly catalogue the video, resulting in a delay of about six months in criminal proceedings against one of the drivers while police staff searched for the missing evidence, court records show. The case was dismissed June 28.

In another case, Tatum seized a man's car and then abandoned him on the side of the

We use cookies to optimize your experience, analyze traffic, and personalize content. To learn more, please visit our Privacy Policy. By using our site without disabling cookies, you consent to our use of them.

Accept

Tatum demanded a man give him the earrings he was wearing while he was detained in a parking lot, the man's lawyer said.

Tatum is on the so-called Brady list maintained by the Sonoma County District Attorney's Office, a designation that requires prosecutors to notify defendants and their attorneys when an officer has potential credibility issues, such as having lied in an official capacity.

Rohnert Park Assistant City Manager Don Schwartz said he cannot disclose whether Tatum resigned or was fired, and he also cannot provide Tatum's last day of employment because of California laws prohibiting the release of police personnel information.

"We're very limited on what we can say regarding personnel issues," Schwartz said.

A police union official did not respond to requests for comment.

Tatum said he decided to resign from his job with Rohnert Park last month and quit the law enforcement profession altogether. The internal investigation of him plus the public scrutiny have been stressful, he said, and he had already been thinking about a career change.

"I'm just trying to move on with my life," Tatum said. "The law enforcement profession has changed."

Tatum's attorney, Justin Buffington, did not respond to repeated requests for comment over the course of two weeks. A representative of his Pleasant Hill-based firm said Buffington had no comment or statement to offer.

...

Tatum said he doesn't remember the traffic stop with Freeman, which occurred a year and a half ago.

Freeman is part owner of a dispensary in the town of Mendocino, Sol de Mendocino, and he grows cannabis in the Anderson Valley. On Dec. 29, 2016, Freeman was driving his harvest in a rental car down Highway 101 to the Higher Path dispensary in Sherman Oaks. But he didn't get past Geyserville.

We use cookies to optimize your experience, analyze traffic, and personalize content. To learn more, please visit our Privacy Policy. By using our site without disabling cookies, you consent to our use of them.

Accept

"As I got just past the Asti turnoff I noticed a Rohnert Park police car going northbound and I made the comment, 'What are they doing up here?'" said Freeman, who was driving with the adult son of a friend. "No sooner than I got those words out of my mouth, they braked and crossed the divide and got right beside me and turned on their lights."

Freeman said the traffic stop, involving Tatum and another officer, felt questionable from the start.

He was told by officers that he had allowed his wheels to touch the white fog line, according to Freeman. One of their first questions, according to Freeman: Did he have marijuana in the car? The answer was yes.

Freeman was hauling 47 pounds of cannabis, the bulk of his annual harvest, worth an estimated $65,800. Tatum and the other officer, Joseph Huffaker, seized it and cited Freeman for illegal possession of cannabis, according to public records, including a misdemeanor citation and a letter to the city of Rohnert Park from Freeman's lawyer.

Freeman said he had a packet of documents showing he had a cultivation license through Mendocino County and an agreement to bring the marijuana to the dispensary. He had called the dispensary that morning to alert them he was getting on the road.

Freeman showed the officers — Tatum and Huffaker — his paperwork and put one of them on the phone with his lawyer, Fort Bragg attorney Hannah Nelson.

In an interview, Nelson said Freeman diligently follows California's rules for medical marijuana cultivation, transportation and sale within a collective. While on the phone with the officers, Nelson said she offered to put them on the phone with a Mendocino County sheriff's official who could vouch for Freeman. She said they declined.

"I can honestly say those tactics by the Rohnert Park Police Department were tactics no longer being used by many law enforcement officers," Nelson said. "There had been a recognition (in California) that there were a number of lawful bases on which someone could lawfully be carrying cannabis on the highway. I feel their procedures were certainly out of line."

We use cookies to optimize your experience, analyze traffic, and personalize content. To learn more, please visit our Privacy Policy. By using our site without disabling cookies, you consent to our use of them.

Accept

allow cultivators to be compensated for their work and materials, which he estimated at about $1,400 per pound.

The officers seized the cannabis. Although charges were never filed, Freeman has been unable to get it back. He suspects his cannabis never made it to the Police Department because he's never received proof it had.

But five days after the traffic stop, a Sonoma County judge signed a destruction order for the cannabis requested by Rohnert Park, according to Assistant District Attorney Bill Brockley, who reviewed the case documents in response to the Press Democrat's query last week. It wasn't until about four weeks later that prosecutors received Rohnert Park's report requesting charges against Freeman, the files show. They declined to charge Freeman with a crime "in the interest of justice" after determining Freeman appeared to be following medical marijuana rules, Brockley said.

The city declined to provide information about Freeman's case by press time, including details about whether the cannabis was booked into evidence and if it was in fact destroyed.

"They stole from us, that's what they did," Freeman said.

...

Inside the department, Tatum was regarded as "this amazing dope cop" who brought significant amounts of asset forfeiture money into the city, according to a fellow officer.

Tatum had great independence in the department, which the officer said was beset by a culture of lax oversight. Tatum's co-worker asked to have his name withheld out of concern managers would retaliate against employees speaking out about personnel and policy issues.

The officer said Tatum continued patrolling Highway 101 near the Sonoma-Mendocino border even after command staff last year informed its officers they would no longer routinely do so. Command staff appeared to overlook or ignore Tatum's continued forays north, he said.

We use cookies to optimize your experience, analyze traffic, and personalize content. To learn more, please visit our Privacy Policy. By using our site without disabling cookies, you consent to our use of them.

Accept

"It's suspicious," the officer said. "Why weren't the bosses stepping up, and saying, 'This is a red flag?'"

Raised in Sonoma County, Tatum played basketball for Rancho Cotate High School and received his police training from Santa Rosa Junior College's Public Safety Training Center. State records show Rohnert Park hired Tatum in December 2003, while he was at the public safety academy. He was promoted to sergeant in July 2015.

Tatum has been involved in two officer-involved shootings, one of which was fatal. The District Attorney's Office cleared Tatum in the 2005 fatal shooting of a 30-year-old man who was high on methamphetamine and armed with a gun during a nighttime foot chase. In January, Tatum was one of five officers who shot at a 21-year-old man during a standoff in front of the police station near Rohnert Park Expressway. The man was wounded. District Attorney officials said they are waiting for a Sonoma County Sheriff's Office report on the shooting.

Tatum is also the subject of an ongoing federal civil rights case against Rohnert Park alleging he and other officers conducted an illegal, warrantless search of a family's house in 2014. With his partners at the front door, Tatum was the officer who went around to the back of the house then entered a back door of the home and held a resident at gunpoint, according to an attorney in the case. The trial is scheduled for October.

Tatum said he didn't wish to comment in detail on many of the allegations facing him or meet with a reporter in person.

"For 15 years I put my life on the line," Tatum said. "I was involved with two shootings and it's stressful. I have kids and a wife and I just want to focus on my family and be a good dad."

…

Tatum's boss will not answer questions about him, even in the face of new revelations and increasing public criticism of the city's public safety department. The city's internal investigation of Tatum was first reported in April by Kym Kemp, author of Humboldt

We use cookies to optimize your experience, analyze traffic, and personalize content. To learn more, please visit our Privacy Policy. By using our site without disabling cookies, you consent to our use of them.

Accept

Tatum's boss is Rohnert Park Public Safety Director Brian Masterson. He has refused to speak with The Press Democrat, and referred all questions to Schwartz, the assistant city manager.

Schwartz confirmed the existence of the investigation but would not discuss Tatum or accusations of misconduct, saying California law bars him from discussing police personnel matters.

"I'm not answering questions on specific cases," Schwartz said.

Schwartz also declined to answer questions about the department's oversight of its officers or its prolonged focus on highway drug missions far from Rohnert Park — which increased after other cities ceased.

The operations boosted the department's budget. Local law enforcement agencies can keep a portion of the money they seize through state and federal civil asset forfeiture laws. Since 2015, Rohnert Park's officers have seized assets worth more than $2.4 million, more than any other law enforcement agency in Sonoma County, according to the California Department of Justice. The department's annual budget is about $20 million.

Schwartz, in an email response to The Press Democrat's questions, would not elaborate on the policy decision to send officers so far north but said Rohnert Park participated in these highway drug seizure missions to "reduce the flow of illegal drugs to Sonoma County, including the City of Rohnert Park." He noted that Rohnert Park's crime rate "remains low by historic standards, and response times to fires and other emergencies that are generally within national standards."

He cited an earlier email statement provided last month to The Press Democrat stating that the city takes concerns about police officer conduct seriously. But he declined to provide information about how much money the city is spending on an outside firm brought in to investigate Tatum even though the cost of such contracts are routinely disclosed as part of city business.

"I'm following the recommendation of the city attorney," Schwartz said.

We use cookies to optimize your experience, analyze traffic, and personalize content. To learn more, please visit our Privacy Policy. By using our site without disabling cookies, you consent to our use of them.

Accept

the fire services division in 2017, according to city payroll records. That year, Tatum earned $203,477, including $77,488 in overtime pay, plus benefits valued at $97,959.

Rohnert Park's investigation into Tatum is focused on the complaints of one man, Zeke Flatten, Schwartz said. Flatten said he believes a pair of officers wrongly seized 3 pounds of cannabis from him during a December traffic stop on Highway 101. The investigation is looking into what role, if any, Tatum and Huffaker had in the stop. Huffaker remains employed by the city and is on paid leave.

...

Before he left the Rohnert Park force, Tatum had faced heavy scrutiny in the court cases involving his arrests. Defense attorneys have said that while their job is to question the lawfulness of arrests, they said Tatum stood out as engaging in a pattern of questionable police work and unprofessional behavior.

They raised their concerns with the District Attorney's Office, according to interviews with local lawyers.

"His reputation is of not telling the truth," said Steve Gallenson, 65, a longtime Santa Rosa defense attorney. "He gets caught in court and cases get thrown out because of it."

District Attorney Jill Ravitch declined to discuss whether her office is investigating Tatum for possible misconduct.

"We don't talk about investigations," Ravitch said.

Ravitch's office decides when law enforcement officers have engaged in conduct requiring what's called Brady disclosure, a designation named after a 1963 U.S. Supreme Court case, Brady vs. Maryland, requiring prosecutors to disclose to defendants and defense attorneys information that could undermine an officer's credibility.

Tatum's designation came after he provided false testimony on the stand in 2016 while being questioned about whether he knew a driver's vehicle registration was expired before pulling him over, according to court documents provided to The Press Democrat.

We use cookies to optimize your experience, analyze traffic, and personalize content. To learn more, please visit our Privacy Policy. By using our site without disabling cookies, you consent to our use of them.

Accept

into the records system quickly and was unable to answer his question before the call ended, according to a court transcript. But Tatum testified the dispatcher gave him information confirming he had checked the registration before pulling the driver over, court records show.

Tatum later said he was merely exhausted that day and didn't intend to provide inaccurate information, according to a court transcript.

...

Another of the ongoing claims facing Tatum is that he was involved somehow in the disappearance of more than $10,000 in cash seized from a Fairfield man during a traffic stop two years ago.

Lucas Serafine, 36, who recently moved back to California from Las Vegas, said he had $132,000 in cash in two sealed containers in the trunk of his girlfriend's Mazda 3 sedan when they were pulled over by Rohnert Park police officers about 2:20 p.m. March 10, 2016, on Highway 101 near Cloverdale.

His girlfriend had picked him up at the airport in San Francisco and they were heading north to Humboldt County for a poker tournament at the Bear River Casino. He said he was also going to look at a piece of property he wanted to buy.

According to court documents, the officers, Tatum and Nicholas Miller, had pulled Serafine's girlfriend over for traveling too fast for weather conditions. The officers claimed they smelled marijuana, which they said gave them the authority to search the vehicle, said Serafine, who noted he had just come from the airport and had no marijuana. The officers found the cash.

The officers seized the money and gave Serafine a felony citation for being in possession of money from unlawful drug sales, according to a traffic citation.

Only $121,920 ended up in evidence at the police department, court documents show.

"All I can assume is they reached in and pulled out a stack and put it in their pocket,"

We use cookies to optimize your experience, analyze traffic, and personalize content. To learn more, please visit our Privacy Policy. By using our site without disabling cookies, you consent to our use of them.

Accept

Serafine's lawyer reported the missing $10,080 to the Rohnert Park Public Safety Department. They never received a response, he said.

Serafine is suing Rohnert Park in a case scheduled for a November trial, arguing that Tatum and Miller violated his rights against unlawful search and seizure by their actions during the traffic stop. He's also demanding the city return the remainder of his money.

Tatum denied allegations he or the other officer took the money.

"That did not happen," Tatum said.

Serafine was never charged with a crime, and the District Attorney's Office has since returned $100,000 to him, according to Serafine and the settlement document filed in Sonoma County Superior Court in August 2017.

Chief Deputy District Attorney Scott Jamar said prosecutors investigated the source of the money and determined the bulk was from "potentially a legitimate source." But prosecutors determined the remainder — $21,920 — was "money that was in exchange for a controlled substance or proceeds from drug sales," according to Jamar. He declined to provide information about the evidence linking the cash to drug sales.

Serafine denies any criminal involvement and said the money was from gambling, which has been his primary income for the last eight years. Serafine said the District Attorney's Office never produced evidence linking his money to criminal activity, and he said he felt pressured to resolve the case because the financial loss was difficult. As a gambler, he needed money to make money.

"They never said (to me), 'We believe the money is tainted,'" Serafine said. "They can't tell a reporter that, that's so wrong."

On June 26, four days after Rohnert Park officials acknowledged that Tatum had left the department, Serafine said he received a phone call from a lawyer representing the city of Rohnert Park who made an initial offer of $15,000 to settle the civil case, then upped it to $22,000.

We use cookies to optimize your experience, analyze traffic, and personalize content. To learn more, please visit our Privacy Policy. By using our site without disabling cookies, you consent to our use of them.

Accept

"They took my money, held it up like a trophy," Serafine said of the roadside encounter. "They didn't give us a receipt for the money and said, 'You can get an attorney.'"

...

The reported police encounter that launched the ongoing investigation into Tatum was a brief Dec. 5 traffic stop on Highway 101 south of Hopland in Mendocino County.

Zeke Flatten, the driver, said a pair of officers in an unmarked patrol vehicle pulled him over and said he had been speeding. Minutes later the officers were gone, taking with them 3 pounds of marijuana they found in the back of his rented SUV and leaving without giving Flatten a citation, he said.

Flatten said one of the officers said they worked for the U.S. Bureau of Alcohol, Tobacco, Firearms and Explosives.

"He said, 'We're with the ATF. Marijuana is taking over in California like cigarettes, you may get a letter from Washington,'" according to Flatten. "He handed (over) my license and rental car contract and said, 'Have a nice day.'"

Bureau officials told Flatten and The Press Democrat that no ATF officer was involved in his traffic stop.

"I know it wasn't lawful, I know it was unconstitutional," said Flatten, a former police officer at a Texas school district.

Though no law enforcement agency has said its officers were involved, Tatum included Flatten's name on an official police report, and the department in February issued a press release about a December traffic stop and marijuana seizure near the Mendocino-Sonoma county line. The press release didn't identity the driver or provide the day of the stop.

Tatum said he made a paperwork mistake that has drawn him into a "lengthy" internal investigation. Tatum said he has no memory of a traffic stop involving Flatten, and he incorrectly put Flatten's name into a police report involving a different driver on a different day because he relied on information given to him by the Mendocino County Sheriff's

We use cookies to optimize your experience, analyze traffic, and personalize content. To learn more, please visit our Privacy Policy. By using our site without disabling cookies, you consent to our use of them.

Accept

Tatum said he was conducting surveillance near the Sonoma-Mendocino county line on Dec. 18 when he and Huffaker stopped a Mercedes-Benz in connection with an unrelated case.

It turned out the driver wasn't the person they were looking for, but they found he was hauling about 30 pounds of cannabis that he didn't have documentation for, according to Tatum. He said the driver told the officers the cannabis wasn't his, so they seized it, booking it into the Police Department as "found property," according to Tatum and Rohnert Park evidence records. Tatum said that they aren't required to write a report for "found property," so he didn't have any record of the driver's identity.

Tatum said he didn't call the traffic stop into dispatch at the time because "we were trying to stay low key" during the surveillance operation.

"We were provided with Zeke's information, that's why the name and date got messed up. It's because we were provided the date and the name from the Mendocino County Sheriff's Office," Tatum said. "That was the only stop that we remembered dealing with anybody with a similar vehicle."

Flatten's persistent complaints about the traffic stop and drug seizure prompted the city of Rohnert Park to hire an outside firm to conduct an administrative investigation into Tatum. Flatten also sent a complaint about his encounter with the unidentified officers to the Mendocino County Sheriff's Office and the FBI.

An FBI spokesman said they reviewed the complaint but didn't find grounds to investigate further. When asked whether the agency is investigating Tatum related to other matters, FBI spokesman Prentice Danner said he could not provide further comment.

…

The same year Tatum was promoted to sergeant, he was awarded "Officer of the Year" for his work on drug interdiction cases. Rohnert Park City Councilman Amy Ahanotu, who was mayor at the time, complimented Tatum for his passion for combating illegal drug activity during a March 2015 council meeting.

We use cookies to optimize your experience, analyze traffic, and personalize content. To learn more, please visit our Privacy Policy. By using our site without disabling cookies, you consent to our use of them.

Accept

Tatum has arrested or cited at least 68 people from 2013 through 2017 for charges that include marijuana possession, according to Rohnert Park Public Safety Department records. Of those, 30 people were convicted of a crime. Misdemeanor possession of more than 28.5 grams of marijuana was the most frequently cited crime.

The charges were dismissed against 14 defendants — representing 20 percent of his marijuana possession arrests. In addition, the Sonoma County District Attorney's Office rejected 10 drug cases involving an unknown number of people arrested by Tatum, which means prosecutors declined to file any charges in those cases, records show. The remaining 15 cases are pending or were resolved in other ways.

"There have been many cases where lawyers have filed motions to suppress evidence based on the fact that he (Tatum) pulls people over without cause," said Gallenson, the veteran Santa Rosa defense attorney. "And then he doesn't tell the truth about it and he gets caught in those lies. And the case gets dismissed. Then what happened to him is he gets a promotion."

...

Gallenson said he complained about Tatum to the District Attorney's Office in 2014. Gallenson said he told a lawyer in the District Attorney's Office that Tatum seemed to be out of control and called him "a rogue cop."

Gallenson's complaint stemmed from several encounters between Tatum and one of his clients, who was under investigation for illegal drug sales. In one instance, Gallenson said, Tatum ordered the man to give up the earrings he was wearing in a parking lot.

The lawyer's comments were apparently relayed back to Tatum, who showed up about a week later to Gallenson's Mendocino Avenue office with a stack of complaint forms. Tatum ran into Gallenson's law partner, Chris Andrian, in the parking lot.

According to Andrian, another veteran of the local defense bar, Tatum shoved a stack of complaint forms in his direction and said Gallenson was "taking food off his family's table" by questioning the integrity of his police work with the District Attorney's Office. Andrian

We use cookies to optimize your experience, analyze traffic, and personalize content. To learn more, please visit our Privacy Policy. By using our site without disabling cookies, you consent to our use of them.

Accept

"He got so aggressive toward me, it freaked me out," said Andrian, 74. "I saw a side of him that I'd never seen before."

A week or so later, Andrian and several other lawyers watched as Tatum confronted Gallenson in a Sonoma County Superior Court hallway. Several witnesses said Tatum's demeanor and statements during the encounter went beyond the normal adversarial relationship between criminal defense attorneys and cops.

"There's no other cop I've ever known who has behaved that way in a courthouse," Andrian said.

Cellphone video taken of the encounter shows Tatum confronting Gallenson, who is seated on a hallway bench talking to a prosecutor. Not all of the conversation is audible but in response to Tatum's complaints, Gallenson responds: "I thought it was an out-of-control move."

"What about it? He's a drug dealer. All this stuff that he has, it can come through court," Tatum said in the video, referring to Gallenson's client. "So if you want to run your mouth outside of court, I'm going to do everything I can to prove my case. This is unprofessional, you calling the DA and telling them I'm out of control. It's unprofessional and it's childish."

They continued discussing the issue while other attorneys and bystanders watched, and Tatum began indicating he would consider taking some kind of action if Gallenson questioned his police work again with the District Attorney's Office.

"If you call the DA's office again and say I'm out of control and that you have issues ..." said Tatum.

Gallenson stood up, folded his hands in front of his torso and said: "What?"

"I'll call the (California) Bar Association, OK? Because court is the time to bring something like that up, not trying to ruin my reputation or try to make me look bad," Tatum said.

Several weeks after that courthouse confrontation in 2014, about 10 defense attorneys gathered at a conference table at Andrian and Gallenson's office to discuss their concerns

We use cookies to optimize your experience, analyze traffic, and personalize content. To learn more, please visit our Privacy Policy. By using our site without disabling cookies, you consent to our use of them.

Accept

They've done so in several cases so far.

...

Tatum was expected to testify as a witness on March 1, 2016, in a Sonoma County courtroom when instead he conducted a traffic stop on Highway 101 between Rohnert Park and Santa Rosa, according to Sebastopol criminal defense attorney Izaak Schwaiger, who described the incident in an interview as well as in a declaration filed in court. A judge was scheduled to consider Schwaiger's argument alleging Tatum conducted an unlawful warrantless search and so the evidence taken should be inadmissible.

But Tatum did not show up in court. Instead, Tatum pulled over a vehicle for speeding and tailgating, according to the court files.

The driver, Luis Carnero, said he was driving about 5 mph above the speed limit. He said Tatum immediately started asking Carnero and his passenger if they had cash or drugs in the car. In an interview, Carnero described his encounter with Tatum as "one of the worst experiences of my life."

"He started immediately getting aggressive," Carnero said. "My friend with me is a bit flashy, he wears jewelry, and Tatum, he immediately labeled us as drug dealers."

Tatum searched the vehicle and their luggage, finding a few grams of marijuana they had purchased at a San Francisco dispensary. He seized the rental vehicle and both men's cellphones, and ultimately gave Carnero a citation for driving without a license, according to the documents.

Carnero had a valid Texas driver's license, but he had moved from Texas to San Francisco a little more than a month before the traffic stop. Tatum said Carnero had failed to acquire a California driver's license in a timely manner, according to Carnero.

A judge ultimately dismissed the case against Carnero, but he was still on the hook for more than $1,000 in fees from the rental car company because the vehicle was impounded.

Carnero said he was so troubled by the encounter that he agreed to testify in an unrelated

We use cookies to optimize your experience, analyze traffic, and personalize content. To learn more, please visit our Privacy Policy. By using our site without disabling cookies, you consent to our use of them.

Accept

provide context about an alleged pattern of behavior by the officer. His testimony ultimately was not needed and the case was dismissed.

Schwaiger, Carnero's lawyer, said he's handled several cases with Tatum as the arresting officer, including a case when he argued Tatum provided false information on the stand.

Tatum "has no business to be wearing a badge," Schwaiger said, "and quite frankly I'm glad to hear he's not anymore."

You can reach Staff Writer Julie Johnson at 707-521-5220 or julie.johnson@pressdemocrat.com. On Twitter @jjpressdem.

## Well, hello there...

... we're glad you stopped by to check out our award-winning coverage of the North Bay.

Did you know that each day our reporters write an average of 25 original stories for both the web and print? That's a lot of news, which takes time, hard work and money to produce--something advertising alone can't support.

That's why we're asking for your help to continue our 100-year-old commitment to our community.

For just 35 cents per day, you'll get unlimited access to our unique news, photography, insight and perspective while supporting the ongoing work of The Press Democrat.

Thanks!



### Become a subscriber

*I'm already a subscriber.* Sign In

**Trending Now**

Ads by Adblade

We use cookies to optimize your experience, analyze traffic, and personalize content. To learn more, please visit our Privacy Policy. By using our site without disabling cookies, you consent to our use of them.

Accept